JOSEPH R. HUBBARD et al., Appellants, v. CHARLES W. WHITEHEAD et al.

Division Two, June 29, 1909.

1. **CONVEYANCES: Mistake in Description: Made Certain: Intention.** A deed, made fifty years ago for a valuable consideration, under which the grantee took immediate possession and under which he and his grantees through mesne conveyances have since been in continuous possession, will not, at the suit of the grantor's children who under a will were his devisees in remainder after their mother's death in 1900, because of a mistake in the description, be held to have been a mere blank piece of paper, if by giving effect to the intention of the parties the uncertain description may be made certain.

2. ———: ———: **Ambiguity: Rejecting False Call.** Where there are two descriptions, the one consistent with a reasonable hypothesis and the evident intention of the parties, and the other would result in the conveyance being held inoperative,

the contradictions will not be held to create a patent ambiguity. but the false or incorrect call will be rejected, and the remainder interpreted in the light of the facts existing at the time.

3. ———: ———: **Intention of Parties: Description Made Certain: This Case.** In 1856, Hubbard and wife by warranty deed conveyed to Platt land in Jackson county thus described: "Beginning at the north line on the east side of Wyandotte street in block 15 in Hubbard's Addition to the City of Kansas, running south by said Wyandotte street 122 feet, more or less, to land owned by Kersey Coates; thence east to land belonging to the estate of Elijah Jackson, deceased; thence north 122 feet, more or less, to land owned by Swope, being same formerly owned by James Gregory; thence west 127 feet to place of beginning." At that time there was a filed plat of Hubbard's Addition, showing lots 81 to 85 to be in block 15 and lots 90 and 91 to be in block 13, the lots in both blocks fronting on the east side of Wyandotte street, and block 14 lying between them. Hubbard died in 1861, leaving a will by which he devised his real estate to his wife for life with remainder to his children, the plaintiffs, and the wife died in 1900, and this suit in ejectment for lots 90 and 91 in block 13 was brought in 1902. Under the deed from Hubbard and wife, Platt took possession in 1856 of lots 90 and 91 in block 13, and he and defendants through *mesne* conveyances have been in continuous possession since. The first course in the description is "south by said Wyandotte street 122 feet, more or less, to land owned by Kersey Coates"; at the date of the deed the only land owned by Kersey Coates was lot 92 in block 13. The description fixes the eastern boundary as "land belonging to estate of Elijah Jackson"; the said estate owned no lands in block 15, but did own land forming the eastern boundary of lots 90 and 91 in block 13. The description fixes the northern boundary as the "land owned by Swope, being the same formerly owned by James Gregory"; the land owned by Swope and conveyed to him by Gregory in 1856, joined block 13 on the north, while the northern boundary of block 15 belonged to La Sarge. The description calls for lots 127 feet deep; the lots in block 13 are 127 feet deep, but those in block 15 are 70 feet deep. Within a month after the deed to Platt, Hubbard and wife conveyed lots 81 to 85 in block 15 to King. *Held*, that that description is certain which can be made certain, and if the starting point is understood to be the north line of block 13 instead of the north line of block 15 the description fits exactly lots 90 and 91 in block 13, and the parties intended to convey said lots, and the false call will be rejected, and the deed held to have conveyed said lots.

221 Sup—43

4. ———: ———: **Extrinsic Evidence** is always admissible to explain descriptive calls in a deed.

5. ———: ———: **First Call.** Where the first call or starting point in the description of the land is inconsistent with all other calls, and being rejected there remains enough to ascertain with precision the land intended to be conveyed, the first call will be rejected.

Appeal from Jackson Circuit Court.—*Hon W. B. Teasdale,* Judge.

AFFIRMED.

*Edward P. Gates, Geo. H. English* and *Geo. H. English, Jr.,* for appellants.

(1) If the Platt deed be construed to embrace the land in question, it must necessarily follow that two descriptions are embraced in the deed, and this constitutes a patent ambiguity, rendering the deed void, and parol evidence is not admissible to aid such description. Mudd v. Dillon, 166 Mo. 110; Carter v. Holman, 60 Mo. 498; Devlin on Deeds, sec. 1010. (2) The description in the Platt deed cannot be so construed as to embrace the property in question.

*McCune, Harding, Brown & Murphy* and *C. S. Palmer* for respondents.

(1) Every deed must if possible be made operative. Peter v. Byrne, 175 Mo. 233; 4 Am and Eng. Ency. Law (2 Ed.), 798. (2) The pole star of construction in this State is the intention of the parties to the deed as gathered from the four corners of the instrument in the light of the circumstances in which the parties were when they executed it. Utter v. Sidman, 170 Mo. 284; Krueger v. Railroad, 185 Mo. 234; Whitaker v. Whitaker, 175 Mo. 1; Walton v. Drumtra, 152 Mo. 489; Presnell v. Headley, 141 Mo. 187; Gibson v. Bogy, 28 Mo. 478; Shultz v. Lindell Heirs, 40 Mo.

330; Thomson v. Thomson, 115 Mo. 56; Bean v. Kenmuir, 86 Mo. 666; Brown v. Gibson, 82 Mo. 529; Speed v. Railroad, 163 Mo. 111; Linville v. Greer, 165 Mo. 380. (3) And this is the rule in other States. Cannon v. Emmons, 44 Minn. 294; Perry v. Scott, 109 N. C. 374; Wharton v. Eborn, 88 N. C. 344; Edwards v. Bowden (N. C.), 5 S. E. 283; Talkin v. Anderson (Tex.), 19 S. W. 350; Jackson ex dem. Smith v. Marsh, 6 Cowen (N. Y.) 281; Walsh v. Hill, 38 Cal. 481; Johnson v. Simpson, 36 N. H. 91. (4) The leading rule in construing descriptions is that effect must be given to the intention of the parties and to. that end that shall be considered certain which can be made certain, for a grant shall not fail if the meaning can be spelled out. 2 Am. and Eng. Ency. Law (2 Ed.), 794; Prior v. Scott, 87 Mo. 303; Coe v. Ritter, 86 Mo. 277; Owens v. Frieman, 48 Minn. 483; Shewalter v. Pirner, 55 Mo. 231; Bruensmann v. Carroll, 52 Mo. 231. (5) And actual occupation of the premises may be considered in determining the intention of the parties. Reed v. Locks and Canals, 8 How. 288; Jones on Real Property (1 Ed.), sec. 340; Jones v. Pashby (Mich.), 29 N. W. 374. (6) The. starting point in a description is of no more dignity than other calls, if they are readily ascertainable, and if the starting point conflicts with all the other calls, the latter must control. Cooley v. Warren, 53 Mo. 166; Walsh v. Hill, 38 Cal. 481; Jackson ex dem. Smith v. Marsh, 6 Cowen (N. Y.) 281; Cannon v. Emmons (Minn.), 46 N. W. 356; Scott v. Pettigrew, 72 Tex. 321; Miles v. Sherwood, 84 Tex. 485; Lancaster v. Ayers, 12 S. W. (Tex.) 163; Jones on Real Property, sec. 385; Norwood v. Crawford (N. C.), 19 S. E. 349; Cowles v. Reavis, 13 S. E. (N. C.) 930; Devlin on Deeds, sec. 1033; Edson v. Knox (Wash.), 36 Pac. 698. "Reversing the course is as lawful and persuasive as following the order given." Edson v. Knox (Wash.), 36 Pac. 698; Pearson v. Baker, 4 Dana 323. (7) In case

of conflict, boundaries named in a deed control courses and distances, the reason for the rule being that errors are more likely to occur with reference to measurements than with respect to objects which are fixed and ascertainable. Whittelsey v. Kellogg, 28 Mo. 407; Smith v. Catlin, 117 Mo. 438; West v. Bretelle, 115 Mo. 653; Whitaker v. Whitaker, 175 Mo. 1; Johnson v. Bowlware, 149 Mo. 451; Powers v. Banks (Cal.), 69 Pac. 151; Hobert v. Cable, 102 Mich. 206. (8) Where unmarked lines of adjoining property are called for, such unmarked boundaries will prevail over courses and distances in case of conflict where such unmarked lines can be ascertained. Bartlett Lumber Co. v. Saunders, 103 U. S. 316; Kronenberger v. Hoffner, 44 Mo. 192; Maddox v. Turner (Tex.), 15 S. W. 237; Ragsdale v. Robinson, 48 Tex. 398; Worsham v. Chisam (Tex.), 28 S. W. 905; Worsham v. Morgan (Tex.), 28 S. W. 918. (9) Where a part of a description is repugnant to or inconsistent with other parts, if sufficient remains from which the intention of the parties can be ascertained and identified, the part which is repugnant may be rejected, and this may be done in an action of ejectment, and resort to equity is unnecessary. Johnson v. Bowlware, 149 Mo. 451; West v. Bretelle, 115 Mo. 653; Presnell v. Headley, 141 Mo. 191.

GANTT, P. J.—This is an action in ejectment. The petition is in the ordinary form and the answer is a general denial. The land in dispute is the following: Lots 90 and 91, block 13, Hubbard's Addition to the City of Kansas (now Kansas City) and consisting of about 85 feet at the southwest corner of Eighth and Wyandotte streets in Kansas City. A portion of lot number 90, in fact, all thereof except two feet and three inches, was condemned and taken as a part of Eighth street in 1880. The said portion is not in question in this suit.

On March 8, 1834, the United States issued to Callise Montardeau a patent for the northwest quarter of section 5, township 49, range 33, which includes the land sought to be recovered in this action. Chester Hubbard, the father of appellants, Joseph R. Hubbard and Ellen R. Jeffries, is the common source of title. Chester Hubbard died in 1861. By their warranty deed dated August 9, 1856, Chester Hubbard and Mary R. Hubbard, his wife, conveyed to S. J. Platt land in Jackson county, Missouri, described as follows: "Beginning at the north line on the east side of Wyandotte street in Block 15 in Hubbard's Addition to the City of Kansas, and the State aforesaid, running south by said Wyandotte street 122 feet, more or less, to land owned by Kersey Coates; thence east to land belonging to the estate of Elijah Jackson, deceased; thence north 122 feet, more or less, to land owned by Swope, being same formerly owned by James Gregory; thence west 127 feet to the place of beginning."

Plaintiff asserts that Chester Hubbard by his last will and testament devised his real estate to his wife Mary for life with remainder to plaintiffs, his children. Defendants contend that the record fails to show that the will of Chester Hubbard was ever proven in accordance with the laws of Missouri, and it was therefore insufficient to pass title to said lands in this State.

Mrs. Mary Hubbard died in 1900, and the plaintiffs claim that by her death the life estate fell' in and they as remaindermen became entitled to possession of the said lands. The respondent, the Missouri Union Trust Company, claims title to the tract in controversy through mesne conveyances from said Samuel J.. Platt, and the sufficiency of these conveyances to vest in respondents whatever title Samuel J. Platt acquired by his deed from Chester Hubbard and wife is not now disputed by the plaintiffs.

Hubbard in his lifetime platted a tract of land, which includes the lots in controversy, calling it "Hubbard's Addition," and this plat is referred to in all the deeds under which the defendants claim. This plat is copied in the record. The only question in this case is whether or not the deed from Hubbard and wife to Platt includes the land in controversy herein. It is the respondent's contention that the description in this deed conveys land in block 13 in Hubbard's Addition, which lies three blocks south of block 15, and it is clear from the monuments and pointers referred to in the description that the point of beginning should be the northwest corner of block 13 instead of the northwest corner of block 15. At the date of the execution of this deed, Chester Hubbard owned all the lots in block 15 fronting on Wyandotte street and also lots 90 and 91 in block 13 fronting on Wyandotte street, together with a portion of the frontage on said street between said blocks 13 and 15. The first course set out in the description is "South by said Wyandotte street 122 feet, more or less, to land owned by Kersey Coates." At the date of this deed, the only lot owned by Kersey Coates in Hubbard's Addition on the east side of Wyandotte street was lot 92 in block 13, and Kersey Coates owned no lot in block 15. The description in the deed fixes the eastern boundary as "land belonging to the estate of Elijah Jackson." The estate of Elijah Jackson owned no land adjoining lots in block 15 on the east, but did own land forming the eastern boundary of lots 90 and 91 in block 13. The description also fixes the northern boundary as the "land owned by Swope, being the same formerly owned by James Gregory." The land owned by Thomas H. Swope and conveyed to him by James Gregory and wife on February 20, 1856, joined block 13 on the north, while the northern boundary of block 15 belonged to John La Sarge. Again the description calls for a lot one hundred and

twenty-seven feet in depth. This is the exact depth of lots 90 and 91 as shown by the plat. While the lots in block 15 are only seventy feet in depth and the land adjoining block 15 on the east·was not owned by Hubbard. On September 8, 1856, and within one month after the execution of the deed in question, Chester Hubbard and wife conveyed to Hezekiah H. King lots 81 to 85 inclusive in block 15, being the land at the northwest corner of block 15. The abstract of title admitted in evidence under the stipulation of counsel sho'wed that Chester Hubbard never attempted to make any conveyances of lots 90 and 91 in block 13 other than by his deed to S. J. Platt. The land immediately joining lots 90 and 91, block 13, was known as Jackson estate land when this deed was executed. Neither Chester Hubbard nor his wife nor children have ever been in possession of this property since this deed to Platt was executed in 1856, nor have they or any of them ever paid any taxes thereon since that time. A portion of this lot 90 as already said was condemned in 1880 as a part of Eighth street, and only two feet and three inches of said lot remains unappropriated for street purposes. The land claimed by the defendant, the Missouri Union Trust Company, consists of all of lot 91, block 13 and the south two feet and three inches of lot 90. The land in question lies at the southeast corner of what is now Eighth street and Wyandotte street in Kansas City. It is a very valuable piece of property, the present defendant trust company having paid $55,000 for it in 1886.

Samuel Platt took possession of this land before the death of Chester Hubbard and was living on it in 1857 and 1858 as his home. He occupied the premises until the war began in 1861 and 1862, when he returned to Kentucky. From the time of Platt's departure until 1866 the property was in the possession of tenants of Platt; then Jenkins, to whom Platt conveyed the north 72 feet of the tract, moved into the

property and he and his heirs owned the part the house was on until 1880. In 1880 J. C. Gates, one of the owners in defendant's chain of title, purchased the south 50 feet of lot 91, erected a two-story brick building thereon and thereafter collected the rents and paid the taxes until he sold to Dobson and Douglas in 1886. The defendant, the Missouri Union Trust Company, took possession of the entire tract in January, 1886, and from that time until the present has collected the rents and paid the taxes and been in possession. When the company took possession in 1886, the property was inclosed within a fence. The defendant, the Missouri Union Trust Company, built a two-story brick building on the north side of the land in 1886, and then a year or two afterwards moved its office into the new building and until this suit was brought has occupied part of said building as its office. During the thirty years prior to the bringing of this suit, the taxes have been paid by the defendant, the Missouri Union Trust Company, and the owners of said property under whom it claims title.

I.   In this suit the plaintiffs are assailing the sufficiency of a deed executed by their father, Chester Hubbard, over fifty years ago. By virtue of that deed S. J. Platt, the grantee therein, took immediate possession of the property in controversy in this suit and the respondent, the Missouri Union Trust Company, by mesne conveyances has acquired all the title which Platt obtained by that deed. Neither Chester Hubbard nor his widow nor his children have been in possession, nor have they paid any taxes on said lots since the delivery of the deed to Platt. Plaintiffs say that the only question in the case is whether or not the description in the deed from Chester Hubbard to S. J. Platt includes the lands in controversy: In Speed v. Railroad, 163 Mo. l. c. 125, it was said by this court: "When a deed is construed as a whole, as it should be,

giving due consideration to every part and portion of it, . . . there ought not to be any serious difficulty in arriving at the true intent and meaning of the grantor." It is manifest that this litigation is predicated upon the mistake made by Hubbard as to the beginning point in the description of the land he sold and conveyed to Platt in 1856. Common honesty and common sense equally require that this deed should not be held void for uncertainty if it can be given any other reasonable construction. The heirs or devisees of Hubbard should not be allowed to say that this solemn conveyance of their father for a valuable consideration meant nothing, and that the grantee, Platt, received nothing but a blank piece of paper, and that the possession of this land under that deed all these years with a full knowledge of Hubbard and his devisees was without any authority. In other words, effect must be given to the intention of the parties, and to that end that must be considered certain which can be made certain, and the grant shall not fail if this meaning can be spelled out. This court in Peter v. Byrne, 175 Mo. 233, l. c. 247, adopted the language of Roberts v. McIntire, 84 Me. 362: "But, with respect to conveyances to real estate, courts in modern times have shown more consideration for the substance of the contract than for the shadow, for the passing of the estate according to the intention of the parties than for the manner of passing it; and whenever the rules of language and of law will permit, that construction will be adopted which will make the contract legal and operative in preference to that which would have an opposite effect."

It seems to be one of the principal contentions of the plaintiffs that by some kind of reasoning, the description in this deed would apply to a piece of ground owned by Hubbard at the time of the execution of the deed other than the lots now in dispute. They then deduce the rule that this brings about a patent

ambiguity which renders the deed void. But we are of the opinion that this case is one in which the old maxim "*Falsa demonstratio non nocet*" applies. In other words, that where we have two descriptions, the one consistent with a reasonable hypothesis and the evident intention of the parties and the other would result in the conveyance being absolutely inoperative, we reject the false or incorrect call and then apply the description in the light of the facts existing at the time. So in this case if we reject the first false call, to-wit, the starting point, and then apply the known facts at that time, we think there is no doubt whatever that the deed in question was sufficient to convey these lots 90 and 91 in block 13. It is obvious, we think, that the beginning point should have been the northwest corner of block 13 instead of the northwest corner of block 15, a mistake very easily made. We have already indicated in the statement of the facts that the first call of 122 feet along Wyandotte street to the land owned by Kersey Coates fixed Coates's lot 92 as the south boundary of this tract conveyed to Platt. At that time Coates owned lot 92 in block 13 and owned no lot in block 15. This is not all; the deed just as effectually fixes the eastern boundary of the tract conveyed by the reference to "the land belonging to the estate of Elijah Jackson." At that time the estate of Jackson owned no land adjoining lots in block 15 on the east, but did own lands which formed the eastern boundary of these lots 90 and 91 in block 13. Equally certain was the northern boundary fixed as "land owned by Swope being the same formerly owned by Gregory," and this land joined this block 13 on the north.

The decisions are numerous that the starting point in a description is of no more dignity or importance than other calls, if they are readily ascertainable, and if the starting point conflicts with the other calls the latter must control. [Cannon v. Emmons, 44 Minn.

294.] Extrinsic evidence is always admissible to explain the calls of a deed for the purpose of applying them to the subject-matter and thus give effect to the deed. While it is true that a deed must so describe land sought to be conveyed thereby that it can be identified, that is certain which can be rendered certain and in construing a doubtful description in a grant, the court will put itself in the position of the contracting parties as near as possible and consider the circumstances of the transaction between them and then read and interpret the words used in the light of these circumstances. And when this is done, in this case, all that is necessary to do is to reject the first call, the starting point, and then applying the description to the land in the light of the various calls for the boundary thereof, we have no doubt whatever that it was sufficient to convey the two lots 90 and 91 in block 13 of Hubbard's Addition. In Walsh v. Hill, 38 Cal. 481, approved by this court in Speed v. Railroad, 163 Mo. 111, it was said: ''If the starting point is fixed, certain and notorious and there is a conflict between it and other calls, the latter must generally give way to the former, but when succeeding calls are as readily ascertained and are as little liable to mistake, they are of equal dignity with the first and when they all conflict with the first and agree with each other, their united testimony must control.'' [See, also, Scott v. Pettigrew, 72 Tex. 321.] In Cooley v. Warren, 53 Mo. l. c. 168, it was said, ''The first or starting point was surely a mistake, but all the rest of the description was by natural objects and fixed and permanent monuments so as to leave no doubt whatever as to the true location. Strike out the first or inconsistent call, and still enough remains to designate the land with certainty. The rule is clearly established that whenever natural or permanent objects are embraced in the calls of a survey or deed, they have absolute control, and that a call

may be rejected for inconsistency or repugnancy, where description enough remains to ascertain and describe land with certainty.'' Many other cases might be cited to establish these well-settled principles, but we deem it entirely unnecessary. We think the first, or the beginning point, should be rejected because it is utterly inconsistent with all the other calls in the deed; that having rejected that, there is sufficient certainty in the other calls to describe these two lots 90 and 91 in block 13 and that the deed was amply sufficient to carry the title of Hubbard to Platt. And in addition to that, we think a court of justice should, and we will, take notice, in arriving at the meaning of this deed, to the facts, that immediately upon the delivery of this deed to Platt, Hubbard gave him actual possession of these lots and Platt fenced the entire tract, built a house and barn upon it and resided upon the premises and neither Hubbard nor his heirs from that time until the filing of this suit, a period of forty-six years, ever made any claim of ownership to this land, nor paid any taxes upon it. And that Hubbard did not consider that he had conveyed Platt any part of block 15, is, we think, clearly established, by the fact that, in less than a month after he made the deed to Platt, Hubbard conveyed the property at the southeast corner of Fifth and Wyandotte, being the property at the northwest corner of block 15 in his addition, to Hezekiah King, clearly showing that he did not intend to convey to Platt the 122 feet of ground in the northwest corner of block 15, and Hubbard never did make any other conveyance of the land in controversy in this suit.

Having reached this conclusion we deem it entirely unnecessary to pass upon the other propositions advanced by the respective counsel as to the Statute of Limitations and the tax title.

In our opinion the circuit court properly ruled

and held that the deed from Hubbard to Platt of date August 9, 1856, conveyed the land in controversy to said S. J. Platt, and accordingly the judgment is affirmed.

*Burgess* and *Fox, JJ.,* concur.