## H. WESTON LUMBER CO. *v.* STRAHAN *et al.*

[90 South. 452, No. 22233.]

1. EVIDENCE. *Evidence held inadmissible to contradict official map on file in General Land Office.*

A certified copy of the official map on file in the General Land Office of the government survey of lands, which is made up from the government surveyor's field notes, is the best evidence of what appears thereon; and testimony of a surveyor to the effect that the field notes of the government surveyor of the land in question shows a different survey from that shown on such plat is not admissible to contradict or vary such plat.

2. EVIDENCE. *Parol testimony held not admissible to show that land on General Land Office plat was intended to be assessed under another description.*

Where land claimed by virtue of a tax deed which according to the official plat in the General Land Office is described as the north half of the Elisha Lott claim, certificate 55, section 28, township 6, range 17, and the assessment and tax deed under which it is claimed describes the said land as the south half of section 6, township 6, range 17 west, and there appears on such official plat of the township in which said lands are situated land answering the later description, parol testimony is not admissible to show that the land described as the north half of the Elisha Lott claim was intended to be assessed and sold under the description of south half, section 6, township 6, range 17, west.

APPEAL from chancery court of Pearl River county.

HON. D. M. RUSSELL, Chancellor.

Suit by the Weston Lumber Company against L. B. Strahan and another. From a decree of dismissal, plaintiff appeals. Affirmed.

*W. T. McDonald and N. C. Hill,* for appellant.

*Parker & Shivers,* for appellees.

ANDERSON, J., delivered the opinion of the court.

Appellant, Weston Lumber Company, filed its original and supplemental bills in the chancery court of Pearl River county against the appellees, Strahan and Williams, asserting title to the South half of section 6, township 6, range 17 .W., in said county, and averring that appellees were pretending to have some sort of claim thereto which was without foundation and praying that such pretended claim be canceled as a cloud upon appellant's title, and that appellees be restrained from depredating on the land. There was a trial on bill, supplemental bill, answer, and testimony, and a decree rendered dismissing appellant's bill, from which this appeal is prosecuted.

The question for decision is whether appellant acquired title to the North half of what is known as the Elisha Lott claim, consisting of three hundred and twenty acres, described as the North half of Elisha Lott claim, certificate 55, section 28, township 4, range 17 W., by virtue of appellant's tax deed of 1888, through which it claims tit¹ ' thereto, under an assessment and sale describing said land as the South half of section 6, township 6, range 17 W. Appellant contends that the land described as the North half of the Elisha Lott claim, and the South half of section 6, is identical—that it is the same land by different description. While the appellees contend that the official government survey and plat of said township introduced in evidence shows that the South half of section 6 as there surveyed and platted constitutes no part of the North half of the Elisha Lott claim which is also there laid down; and therefore the assessment and sale of the land as the South half of section 6 was void.

In considering this question it is well to bear in mind the fundamental principle that in order to authorize a sale of land for taxes there must be a valid assessment, and that there can be no valid assessment and sale thereunder without an opportunity on the part of the owner to be heard

at some point in the proceeding (at what point it is not here necessary to decide), at least before the sale is completed, otherwise such a sale would amount to a taking of property without due process of law; and there is no such opportunity for a hearing if the description of the land in the assessment, as well as in the advertisement of sale by the tax collector corresponding to the assessment, is void; for in that event neither the assessment nor such advertisement would afford the owner any notice that his land was charged with a tax lien and about to be sold to satisfy such lien. Sections 490 and 401, Code of 1880, governing the manner and effect of the assessment of land which were in force when the land in question was assessed and sold, and which are now embodied in sections 4283 and 4285, Code of 1906 (sections 6917 and 6919, Hemingway's Code), provide that lands shall be assessed according to the government surveys if there be such, and, if not surveyed according to the usual government plan, then they *"shall be assessed by the designation used on the government maps"* (italics ours) or designated by other means sufficient to furnish a guide for ascertainment by parol evidence of the particular land intended, and (quoting from the statute) if "there is enough in the description on the roll or conveyance to be applied to a particular tract of land by the aid of such testimony," the assessment is sufficient. In order to determine whether the assessment in question was valid, it must be understood what is meant in the record by the Elisha Lott claim, for appellant in its bill deraigns its title back to the North half of the Elisha Lott claim. The government survey of Township 17 in which the land is situated was made in 1821; and all existing claims to land recognized by the government in said township, one of which was that of Elisha Lott, were surveyed by authority of the government in 1824. From the field notes of these surveys and other data accompanying same there was made a plat or map of said township, a certified copy of which was introduced in evidence. Judge SHARKEY, in *Surget* v. *Little,* 24 Miss. 118, gives a history of the legislation by Congress providing for the survey of this terri-

tory, and how existing claims to land should be recognized, surveyed, and platted, and how in doing so fractional sections often resulted.

This plat shows the Elisha Lott claim in this form: On the face of the township it is a square block shaded, and covers in 'area exactly what would have been the South half of section 6 and the North half of section 7, if those sections had been full; and is marked "twenty-eight Elisha Lott;" and in the margin on the right, under the caption "Claimants," there is this: "Elisha Lott, section 28, certificate 55, acres six hundred and thirty-nine and forty-six one-hundredths." And below this in the margin it is stated that the first survey was made in 1821, and the private claims were surveyed in 1824. And the land bordering this claim on the north is set down as fractional section 6, with three hundred and nineteen and thirty-six one-hundredths acres in it, and that on the south as fractional section 7 with two hundred and sixty acres in it. Therefore fractional section 6 is what would have been the North half of section 6 except for the Ellisha Lott claims, and fractional section 7 is what would have been the South half of section 7 except for said claim. It follows that, if this plat is to control, the assessment and sale in question covered the South half of fractional section 6, which is entirely outside of the Elisha Lott claim; the south boundary thereof being the north boundary of said claim. But appellant offered Seale, a surveyor, as a witness to contradict the survey as exemplified by this official plat. He testified that the field notes of the government survey of this township showed sections 6 and 7 to be full sections; and he concluded that in 1824, when the survey of the private claims was made, the Elisha Lott claim was merely superimposed on the North half of section 7 and the South half of section 6. It was held in *Surget* v. *Little,* 5 Smedes & M. 319, that copies of the official maps of the surveys of land deposited in the surveyor general's office were the best evidence of the extent, character, and boundaries of such surveys. And in this same case when before this

court later, as reported in 24 Miss. 118, C. J. SHARKEY, for the court said:

"But, it is said, the description given in the patent should have been established by the survey made and returned according to law, with the field notes and the map made out by the surveyor general, this being the only mode by which the existence of such a section as that called for by the patent, could be proved. The original surveys and field book were not introduced. We do not think that such proof was necessary. The law has intrusted to the surveyor general the duty of making out the map from the returns made to him; when he has discharged that duty, we must suppose it was faithfully done according to law. From a copy of this map transmitted to the register and receiver, the public lands are sold, and the number given to the sections on these maps is the authentic lawful description. If we could require the field notes, we might be required to go further, and require the surveyor to be sworn. The maps are admitted in evidence as official acts. When this case was before us on the former occasion, the plaintiff failed, for want of a copy of the official map. We then held, that such a copy of the map was indispensably necessary, as the proper mode of proving the identity and description of the land conveyed by the patent."

Such plats ought to be the best evidence and conclusive of the facts thereon shown when coming in view collaterally. They were made from the field notes as well as other data reported by the surveyors on the ground and doing the work. Our conclusion is that by the evidence offered the plat could not be contradicted or varied.

Taking the plat in question as conclusive, we have simply as assessment and sale of the South half of section 6 which is shown on the plat but located to the north of and entirely outside of the Elisha Lott claim. We know of no case holding that where one piece of land is assessed and sold, the purchaser, in order to sustain his title to an entirely different piece of land, was permitted to show by parol that the latter, and not former, was intended to be

assessed and sold. That is what appellant's position means in this case; for the South half of section 6 was assessed and sold, which was a real piece of land as shown on this official plat, and appellant's fight in this case has been to show that another and different piece of land was intended, to-wit, the North half of the Elisha Lott claim, also surveyed and plainly depicted on said plat. There is nothing in the description South half of section 6 that pointed to anything outside to which parol evidence could be resorted to apply the description. In fact the description itself was perfect—it needed no aid. What was there in the assessment, or the advertisement of the sale for taxes, or in the description in the tax deed, to give the owner notice that the North half of the Elisha Lott claim was intended? We see nothing.

*Affirmed.*