COLEMAN *v.* WHITE.

Division A. Feb. 19, 1951.

No. 37827 (50 So. (2d) 715)

**Sims & Sims**, for appellant.

**Jno. F. Frierson** and **Roger C. Landrum**, for appellee.

**Lee, J.**

This case, from its inception until the final decree, was in court for a period of ten years. It began as an ejectment suit by M. E. Coleman against Mrs. F. A. White in the circuit court. After the judge, without a jury, had heard the evidence, by agreement of the parties and the judge, it was transferred to the chancery court. In that court, Mrs. White, by her original and amended bills, prayed for the correction and reformation of her deed, and for the cancellation of the deeds, through which Coleman claimed title. The evidence, adduced in the circuit court, was transcribed and filed. Thereafter, Mrs. White died, and the cause was revived in the name of Mrs. Katherine Lipscomb Worrell. On the final hearing, the court heard the transcribed and other evidence. From the decree awarding the relief prayed for, Coleman appeals.

The appellant contends that the decree of the lower court was erroneous (1) in construing Mrs. White's deed and a contemporaneous writing together; and (2) in holding that he was not a bona fide purchaser for value without notice.

The facts disclosed this situation: Martha Williams had been a servant of Mrs. White's family for a long time. As she became older, she depended for sustenance more and more upon her former employers. On February 6, 1931, she executed and delivered to Mrs. White a deed to property in Lowndes County, Mississippi, described as, "Lot & house in sq. 98". The deed was filed for record on the same date. Contemporaneously, she executed and delivered to Mrs. White the following instrument:

"Columbus, Mississippi
"Feby. 6, 1931

"In consideration of $300.00 Mrs. F. A. White has let me have, and the additional $50.00 she is letting me have today, I am giving her a deed to my house and lot with the understanding that I am to occupy my house as long as I need it. I also bequeath and will all my property to Mrs. White and appoint her executor at my death.

(Signed) "Martha x Williams
By her Mark.

"Witnesses:
"Mrs. J. R. Manser"

Martha died about March 4, 1934. Mrs. White took charge of the property immediately, and rented it. She had been paying the taxes for years, and had, from time to time, made loans to Martha, aggregating a considerable sum of money. It was the general understanding that the property, at Martha's death, was to go to Mrs. White.

Some time after Martha's death, appellant sought to purchase the lot from Mrs. White. The price asked was $1,000. She and appellant went to the clerk's office to

look over the records. Later, appellant's lawyer advised that the record title was no good. Some time thereafter, Mrs. White carried the other instrument to the lawyer for his inspection. But no deal was consummated.

Martha Williams' sole heirs at law were Irene A. and Arthur Gant, who lived in Liberia. Mrs. White wrote Irene, after Martha's death, that Martha owned no property other than her personal effects. Clara Golden was a cousin of the Gants, and following Martha's demise, she wrote her cousins about the estate, and finally had an administrator appointed. When the administrator talked to Mrs. White about the property, he evidently satisfied himself as to its status, for he did nothing about it, and Clara also lost her interest therein. The lawyer who represented Clara in the appointment of the administrator, also represented appellant in passing on the title of Mrs. White.

Subsequently, appellant talked with Clara Golden, had his attorney to prepare a deed for the Gants to execute to Clara, and she mailed it to them for their signature. Considerable time elapsed before Clara received a deed from the Gants. After its receipt, appellant and Clara had an agreement that she would deed the property to him for $100, and, if appellant lost his suit against Mrs. White, Clara would refund the $100, and appellant would pay the costs and the attorney's fee. Pursuant to that agreement, Clara executed and delivered the deed.

 ██ In construing deeds, courts should effectuate the intention of the parties. Dunn v. Stratton, 160 Miss. 1, 133 So. 140; Sumter Lbr. Co., Inc. v. Skipper, 183 Miss. 595, 184 So. 296, 835.

The description in the deed from Martha Williams to Mrs. White, standing alone, was void for uncertainty. But, when considered with the other contemporaneous instrument wherein Martha Williams declared that she was giving Mrs. White a deed to "my house and lot with

the understanding that I am to occupy my house as long as I need it," it is clear that the intention was to deed her house and lot, which was in square 98. See Thompson on Real Property, Permanent Edition, Section 3290. There was no other square 98 in the county. An engineer was able to plat and correctly describe the lot for reformation.

In Bowers v. Andrews, 52 Miss. 596, it was held that, if "lot and residence of Thos. McMahon in Madison Station", or equivalent words had been used, such would have been a reference to extrinsic facts, and evidence to show which lot and residence in Madison Station was Thos. McMahon's would have been admissible.

This Court in Yazoo & M. V. R. Co. v. Lakeview Traction Co., 100 Miss. 281, 56 So. 393, 395, in speaking of the contemporaneous construction which the parties themselves placed upon an instrument said: ██ "In cases of ambiguity, this contemporaneous interpretation becomes of great value, and frequently is decisive."

Besides, "It is a general rule of construction, well settled by the authorities, that in order to ascertain the intention of the parties, separate deeds or instruments, executed at the same time and in relation to the same subject matter, between the same parties, or, in other words, made as parts of substantially one transaction, may be taken together and construed as one instrument." 16 Am. Jur. 537, Section 175.

██ Mrs. White was in possession of the property. Appellant sought to purchase the lot from her. He had full knowledge of the content of both written instruments, which were executed and delivered at the same time. The administrator of the estate of Martha Williams, after discussing the status of this property with Mrs. White, did not see fit to assert any claim for rent, and Clara Golden lost her interest therein. After these transactions, appellant procured the preparation of a deed and caused Clara Golden to send it to the Gants. Even at the time

of the execution and delivery of the deed by Clara Golden, appellant must have been very doubtful as to the title which he expected to acquire, because it was agreed and understood that Clara would return the purchase price, if his suit failed. Under the facts in this case, the claim that the appellant was a bona fide purchaser for value without notice is wholly untenable.

Affirmed.