GILLESPIE, Presiding Justice:
This case was previously before this Court on an interlocutory appeal which was dismissed because it was improvidently granted. The nature of the case was set out in the opinion in the former appeal and will not be repeated here. Management, Inc. v. Crosby, 186 So.2d 466 (Miss.1966).
Henry T. Crosby, complainant below and appellee here, is an experienced real -estate developer who became interested in developing a memorial park cemetery to serve Greenville and Washington County. He purchased thirty-seven and one-half (37i/£) acres of land situated on U.S. Highway 82 between Greenville and Leland. In the early part of 1952, after Crosby had purchased this land, he was approached by David S. and Glen E. Gilleylen, who represented that they were qualified by training and experience to develop and operate a memorial park cemetery. The Gilleylens had no money, and negotiations between them and Crosby resulted in a deal whereby Crosby agreed to sell the Gilleylens fifteen (15) acres of land for cemetery purposes with no money down. The negotiations resulted in a written memorandum agreement between Crosby and the Gilleylens, the latter acting as sole incorporators of Greenlawn Memorial Gardens, Inc., a domestic corporation, not then organized. Crosby agreed to sell Green-lawn fifteen (15) acres of land for a consideration of $6,000 payable in installments. The agreement provided that five (5) acres of the tract would be free of any purchase money lien in order that Greenlawn could grant titles clear of any lien in that portion of the property. The agreement then provided as follows:
It is understood that as part of the consideration in the sale of the property by Henry T. Crosby to Greenlawn Memorial Gardens, Inc., in addition to the $6,000 paid for the property, Henry T. Crosby will receive 6 per cent of the gross sale of lots and 6 per cent of the gross sale of bronze markers and such accessories. It. is understood that such earnings to Henry T. Crosby will be paid weekly and a full! statement of sales rendered with such remittances weekly. It is provided, however, that such payments will be accumulated until March 1, 1953, and all accumulations to date paid at that time. Thereafter the payments are to be made weekly..
The agreement provided that the payments due under the foregoing would be-secured by appropriate provisions of a deed of trust. The aforementioned agreement was dated June 27, 1952, and signed by Crosby and David S. Gilleylen and Glen E. Gilleylen as incorporators and sole stockholders of Greenlawn Memorial Gardens,. Inc.
The fifteen (15) acre tract was conveyed by Crosby to Greenlawn in two deeds dated July 9, 1952. The first deed conveyed five (5) acres for a stated consideration of “$10, cash in hand paid, and other good and valuable consideration.” The second deed conveyed ten (10) acres for a stated consideration of $10 cash in hand paid and $6,000 to be paid later. This $6,000 was evidenced by three promissory notes of $2,00(1 each.
Greenlawn executed a deed of trust ta W. C. Keady, trustee for Henry T. Crosby, on July 9, 1952, securing the three notes totaling $6,000, the last of which became due July 9, 1955. This deed of trust embraced the ten (10) acres conveyed in the second deed hereinabove mentioned. The deed of trust also stated:
In addition to the principal indebtedness herein described, Greenlawn Memorial Gardens is obligated to pay to Henry T. Crosby 6% of the gross sale of burial lots and 6% of the gross sale of memorial markers and such accessories to said markers as may be sold at any time in the future by Greenlawn Memorial Gardens in conjunction with its cemetery development at Greenville, Mississippi. * * * Such sums of money aforesaid as shall *249 'become due and payable to Henry T. •Crosby, his heirs or assigns shall be secured by the lien of this instrument just .as if said indebtedness were herein specifically described as original indebtedness, .and in event of the failure of the Company to pay, when due, the said additional sums of money accruing to Henry T. ■Crosby by reason of lot sales, memorial markers and accessories to said markers, then the said Henry T. Crosby, his heirs •or assigns shall have the right to declare .all of the indebtedness hereby secured to be immediately due and payable and have the property herein conveyed sold for the ■purpose of collecting said indebtedness.
Greenlawn Memorial Gardens does hereby covenant to pay to Henry T. Crosby, his heirs and assigns said •6% portion of the gross sale of lots, bronze markers and accessories to memorial markers, at the intervals of time as above provided, until the final and complete development and sale of .all land comprising Greenlawn Memorial Gardens (consisting and to consist of 15 acres in all), and the deed of trust herein given shall, notwithstanding the payment of the $6,000.00 original indebtedness first herein specified, continue in full force and effect for the purpose of securing said sums of money to become due to Henry T. Crosby by reason of said sales, * * *.
This deed of trust was acknowledged on July 14, 1952, filed for record July 15, 1952, .and duly recorded in the office of the chancery clerk.
From July 9, 1952, the Gilleylens operated Greenlawn Memorial Gardens, and they .and the corporation generally recognized the covenant to pay Crosby 6% of the gross sales of burial lots, markers and accessories. Beginning about 1955, disagreements arose in connection with certain items. In March 1960 the Gilleylens negotiated for the sale •of the assets of Greenlawn Memorial Gardens to Steve Ragland and Norvell J. Brickell. On March 9, 1960, Greenlawn conveyed all of said cemetery property to the Gilleylens, who then conveyed it to Ragland and Brickell. Ragland and Brickell then conveyed all the cemetery property to Management, Inc., a corporation, all of whose corporate stock was owned by the said Rag-land and Brickell. In connection with the latter transaction, a letter of agreement was entered into between Crosby, Ragland and Brickell dated March 9, 1960, in the following words and figures:
May Building Greenville, Mississippi March 9, 1960
Mr. Norvell J. Brickell Mr. Steve Ragland Greenville, Mississippi
Gentlemen:
Confirming my verbal conversation with you, it is understood and agreed that I will not hold you responsible for any payments from which I have or am entitled to receive a commission or override in accordance with my agreement with the Greenlawn Memorial Gardens except on the money which you collect after this date on accounts receivable for Green-lawn Memorial Gardens and on the lots which you sell for the cemetery.
Nothing in this letter is to be construed as to waiving any of my rights against the Gilleylens or to limit my rights against you in accordance with the terms of a deed of trust now of record in Book 488 at Page 403 of the land records of Washington County, Mississippi, except I would not hold you or the cemetery responsible for the lots sold by the Gilleylens during the time that you operate the Greenlawn Memorial Gardens.
Very truly yours, /s/ Henry T. Crosby Henry T. Crosby
Norvell J. Brickell and Steve Ragland do by these presents accept the liability and responsibility for paying to Henry T. Crosby the six per cent override from the sale of lots hereinafter made in the Green-lawn Memorial Gardens in accordance *250 with the provisions of the deed of trust recorded in Book 488 at Page 403 of the land records of Washington County, Mississippi. (Emphasis added)
/s/ Norvell J. Brickell Norvell J. Brickell
/s/ Steve Ragland Steve Ragland
After Management, Inc., took the control and management of the cemetery, disagreements arose as to the interpretation of the language of the covenant contained in the deed of trust with reference to the 6% due Crosby on the sale of lots, markers and accessories. The parties continued to have disagreements, and this suit was finally filed September 3, 1964.
After this Court dismissed the former appeal, the chancellor made specific findings of fact and conclusions of law. He found: (1) that the actual consideration of the deeds from Crosby to Greenlawn included the covenant to pay Crosby 6% on the gross sales of cemetery lots, memorial markers and accessories to such markers; (2) that the $6,000 portion of the purchase price of the lands had been paid, but complainant was entitled to monthly (complainant agreed to monthly instead of weekly reports) statements and payments of 6% on the gross sales of all cemetery lots, markers and accessories made in the month preceding the report and payment, including 6% of all collections on credit sales, regardless of how financed; (3) that the memorandum of June 27, 1952, was a part of the contract between the original parties; (4) that Ragland, Brickell and Management, Inc., acquired the cemetery property with full knowledge of the actual purchase price; (5) that the agreement of March 9, 1960, signed by Ragland and Brickell, was supported by a good and lawful consideration; (6) that the contract for the 6% payments to Crosby did not constitute an unlawful restraint on alienation and was binding and enforceable; (7) that the Gilleylens, Rag-land and Brickell and Management, Inc., took title to the cemetery property subject to the 6% payments due Crosby. The chancellor also found that the defendants had failed to comply with the 6% covenant and that it was necessary for Crosby to bring this suit to compel performance of the agreement. He found that an accounting was necessary to determine the amount owed Crosby. An interlocutory appeal was allowed to settle the controlling principles of the case. The decree referring the case to a master or commissioner to make the accounting was stayed by a super-sedeas bond.
The principal question for our decision is whether the covenant contained in the deed of trust executed by Greenlawn to W. C. Keady, trustee for Crosby, providing for the payment to Crosby of 6% on the gross sales of cemetery lots, markers and accessories, is valid and binding on Rag-land, Brickell and Management, Inc., the appellants here. The Gilleylens did not appeal. Appellants contend that the 6% covenant is not binding on them for the following reasons.
It is first contended that there is no charge in Crosby’s bill of complaint that the 6% covenant was a part of the consideration for the two deeds from Crosby to Greenlawn and that no evidence was admissible to prove that it was a part of the consideration. We find no merit in this contention. The original bill of complaint averred that the 6% covenant was a valid obligation. In their amended answer and cross-bill, Ragland, Brickell and Management, Inc., averred that the 6% covenant was void as an illegal restraint upon alienation. This was denied by Crosby in his answer to the cross-bill. The pleadings made up the issue as to the validity of the covenant. Moreover, when the written memorandum of June 27, 1952, reciting that the 6% covenant was a part of the consideration for the conveyance, was offered in evidence, it was not objected to on the ground that the pleadings were insufficient.
*251 Crosby testified over appellants’ objection concerning the transaction and stated that the 6% covenant was a part of the consideration for the two deeds to Greenlawn. The deed to the five (5) acres stated a consideration of ten dollars and other good and valuable consideration. This deed was a part of the whole transaction, which included the memorandum agreement of June 27, 19S2, the two deeds, and the deed of trust containing the covenant. Parol evidence was admissible to show the true consideration. Morehead v. Morehead, 222 Miss. 161, 75 So.2d 453 (1954).
Appellants next contend that the ‘6% covenant was not binding on Green-lawn for the following reasons: (1) The agreement was not mentioned in either of the two deeds from Crosby to Greenlawn; (2) the written memorandum of June 27, 1952, was not signed by Greenlawn; (3) the agreement of June 27, 1952, was not •admissible to add to the contractual obligation of the deeds to Greenlawn. In support of this contention appellants cite Tullos v. Town of Magee, 181 Miss. 288, 179 So. 557 (1938). Greenlawn was not organized as a corporation when the June 27, 1952, agreement was signed. However, that agreement stated that it was made on behalf of the corporation by the Gilleylens as incorporators and sole stockholders. It cannot be successfully argued that Green-lawn did not agree to the 6% covenant, especially since Greenlawn executed the deed of trust containing the covenant. We are of the opinion that the whole agreement between Crosby and Greenlawn consisted of the memorandum of June 27, 1952, the two deeds, and the deed of trust containing the 6% covenant. These four instruments were executed at approximately the same time, involved the same subject matter and should be construed together. Coleman v. White, 211 Miss. 29, 50 So. 2d 715 (1951). Tullos v. Town of Magee, supra, is not controlling. In that case neither the deed nor the employment contract referred to the other. In the case before us the memorandum of June 27, 1952, referred to the sale of the lots and provided that the 6% covenant was a part of the consideration for the deeds and provided that the deed of trust should contain appropriate provisions securing that part of the consideration due under the covenant, and the deed of trust did in fact contain such provision.
Appellants next argue that the memorandum of June 27, 1952, should not have been admitted in evidence because it was in derogation of the warranty contained in the deeds to Greenlawn. What has already been said disposes of this argument.
It is also contended that since the deed to the ten (10) acre tract did not refer to the 6% covenant, it was not a part of the consideration. When the documents constituting this transaction are read together, it is apparent that the covenant was a part of the consideration for the two deeds.
The parties to this appeal concede that an attempt to exact an arbitrary sum in case of future alienation of premises granted in fee constitutes an invalid restraint on alienation in the nature of a medieval penalty or fine. The authorities generally agree that a provision requiring that purchase money be realized out of the proceeds of a resale by the grantee is valid and does not constitute an unlawful restraint on alienation. Annot., 123 A.L.R. 1474 (1939).
Appellants contend that neither Ragland, Brickell nor Management, Inc., assumed any obligation or duty personally to pay the 6% on the gross sales of lots, markers and accessories because there was no consideration for the March 9, 1960, agreement. This agreement, copied here-inabove, was signed the same day Ragland and Brickell received the deed from the Gilleylens. The agreement recited that Crosby would not hold Ragland and Brickell responsible for certain payments. The deed *252 of trust securing the payments due under the 6% covenant was in default, and Crosby agreed not to foreclose for the payments then past due. We are of the opinion that the chancellor had ample basis in the evidence to find that the agreement was for a valid consideration. Ragland and Brickell were the sole stockholders of Management, Inc., and the record shows that they were acting, not only for themselves, but for Management, Inc., to whom they immediately conveyed all the cemetery property.
After a careful consideration of the arguments of the parties, we are of the opinion that the decree of the chancellor should be, and it is, affirmed, and the cause is remanded for an accounting and other procedures to enforce the obligations of the parties.
.Affirmed and remanded.
JONES, BRADY, INZER and ROBERTSON, JJ., concur.