BEASLEY *et al. v.* BEASLEY.

(Division B. Jan. 4, 1937.

[171 So. 680. No. 32405.]

524

B. H. Loving and J. E. Caradine, both of West Point, for appellants.

Roberds & Malone, of West Point, for appellee.

526

**Ethridge, P. J.**, delivered the opinion of the court.

Appellee, Rufus F. Beasley, filed a bill in the chancery court of Clay county seeking the cancellation of certain deeds recorded there from Mrs. M. A. Alexander, deceased, to Elmer G. Beasley and Persia Beasley. It was alleged in the bill that Mrs. Alexander departed this life on July 13, 1935, leaving, as her surviving heirs at

law, her brother, Rufus F. Beasley, and the two children of a deceased brother, the appellants, Elmer G. Beasley and Persia Beasley, who claimed title to the property by virtue of certain deeds set out and make exhibits to the bill of complaint, and that Elmer G. Beasley had conveyed some of the land by a deed, which is not on record, to W. M. Henley, and that complainant does not know its description. The bill also alleges that Persia Beasley took out letters of administration on the estate of Mrs. Alexander, and represented in her application therefor that the personal property of Mrs. Alexander would amount to only eight hundred fifty dollars or one thousand dollars. There were also allegations that Elmer G. Beasley and Persia Beasley had lived with Mrs. Alexander, who was an aged person, and had procured the alleged deeds through undue influence, and that said deeds had not been delivered during the lifetime of Mrs. Alexander, and were void for uncertainty, and the bill prayed that said deeds be canceled, and for general relief.

The appellants answered, denying that appellee was entitled to one-half, or to any interest, in said property; admitted that they had the deeds set forth as exhibits to the bill, claiming that they were valid instruments and conveyed the property to the appellants; admitted that Elmer G. Beasley had conveyed some of the property mentioned to Grady Henley, but denied that there had been any conveyance to W. M. Henley, and denied that there had been any undue influence in the procuring of said deeds.

The first deed made an exhibit to the bill is dated April 17, 1930, and, for a purported consideration of four thousand dollars, conveys the south part of northwest ¼, section 18, township 16, range 4, containing 42 acres, also 16 acres north end of southwest ¼, section 18, township 16, range 4; northeast ¼ fractional less 10 acres, section 13, township 16, range 3, containing 120

acres; also north ½ of southeast ¼, section 13, township 16, range 3, containing 32 acres, and all improvements thereon, all being in Clay county, Miss. This deed was acknowledged before Q. D. Vail, justice of the peace, on the above date, and it appears that Q. D. Vail advised Mrs. Alexander against delivering the deeds outright to Elmer and Persia Beasley, suggesting that they be placed in escrow with the right of the grantor to recall them at any time before her death, and if not recalled, then to be delivered to the appellants. This suggestion seems to have been accepted by Mrs. Alexander, and the deeds were placed in the First National Bank of West Point and thereafter withdrawn by Mrs. Alexander and placed in the Bank of West Point, and subsequently withdrawn from that bank and confided to the custody of W. M. Henley, who operated a business and had an iron safe in his office.

On February 24, 1933, Mrs. M. A. Alexander executed another deed to the same property, for the consideration of love and affection, to Elmer G. Beasley and Persia Beasley, acknowledging same before Thomas Wade, a member of the board of supervisors of Clay county. This deed reads as follows: "In consideration of the natural love and affection I have for my nephew, Elmer G. Beasley, and my niece, Persia Beasley, and other valuable consideration, the receipt of which is hereby acknowledged, I convey and warrant to them, the said Elmer G. Beasley and Persia Beasley, the land described as follows;—South part of Northwest ¼, Section 18, Township 16, Range 4 East, containing 42 acres. Also 16 acres North end of Southwest ¼ Section 18, Township 16, Range 4, East. Also the Northeast ¼ fractional less 10 acres, Section 13, Township 16, Range 3, East, containing 120 acres. Also part of North half of Southeast ¼ Section 13, Township 16, Range 3, East, containing 32 acres. And all improvements. The location of the

above said tract of lands are further described as being bounded on the East by the H. C. Simmons lands and the Montpelier and West Point highway. On the West by the Bail and A. O. Cliett lands. On the North by the Montpelier and West Point Highway, and the H. C. Simmons land and on the South by W. D. Simmons lands, and is also known as the I. P. Beasley old home place. All of above lands are situated in Clay County & State of Mississippi."

Another deed to other lands was executed on July 25, 1932, to Elmer G. Beasley, but this is not involved in this appeal.

On July 28, 1932, Mrs. M. A. Alexander executed an instrument purporting to be a deed to her household goods, of every kind, conveying same to Elmer G. Beasley and Persia Beasley, reading as follows: "In consideration of the natural love and affection I have for my niece, Persia Beasley, and my nephew, Elmer G. Beasley, I hereby transfer and assign to them the following personal property, to-wit, All my household and kitchen furniture, of every kind, that I may possess at the time of my death, also One note and trust deed held by me on H. C. Simmons and his wife, also One note or retained title contract against M. W. Howard on one set of blacksmith tools, gas engine, and grist mill, and one wood workers outfit, also, One automobile and all other personal property owned by me at the time of my death, except note and trust deed held by me against A. C. Cox on property in the city of West Point, Mississippi. This conveyance to be delivered to above mentioned Persia and Elmer G. Beasley at my death."

Subsequent to the placing of said deeds with W. M. Henley to be kept until called for by Mrs. M. A. Alexander, she directed him to take said deeds to the First National Bank of West Point for safekeeping to be delivered to Elmer G. and Persia Beasley at the death of Mrs. Alexander. There seems to have been no one pres-

ent at the time Mrs. Alexander delivered these deeds to W. M. Henley to be carried to the First National Bank for safekeeping until the time of her death, and then to be delivered to the appellants. The officer of the First National Bank, to whom the deeds were delivered, took them and placed them in an envelope, marking something thereon, and kept the deeds until after the death of Mrs. Alexander, and then delivered them to Elmer G. and Persia Beasley.

W. M. Henley was examined, and testified specifically as to what his directions were at the time the deeds were handed to him by Mrs. Alexander, stating that she said he was to take them to the bank for safekeeping until her death, at which time they were to be delivered to Elmer G. and Persia Beasley. He also testified that, while this is what she said, of course, she could have called for them at any time in her lifetime, which was only an expression of opinion. A careful analysis of all his testimony shows that Mrs. M. A. Alexander gave the deeds to be delivered to the First National Bank for safekeeping until her death, then to be delivered to the appellants.

The officer of the bank was not certain as to exactly what was communicated to him at the time the deeds were delivered for safekeeping, but testified that the bank kept them as a mere accommodation having received them about a year before the death of Mrs. Alexander, and that, to the best of his recollection, what was said was that Mrs. Alexander sent them to be kept by the bank, and if not called for before her death, to be delivered, at her death, to Elmer G. and Persia Beasley. After the death of Mrs. Alexander, the bank delivered these deeds inclosed in an envelope to Elmer G. Beasley in the presence of J. E. Caradine, an attorney, and the papers were taken to the office of J. E. Caradine, and from thence to the office of the clerk of the chancery court for record, and the envelope was lost or mislaid

and could not be found. Mr. Caradine, upon being introduced as a witness, testified, as to the envelope and its indorsement, as follows:

"I said to Mr. Dugan, we got some papers we want to leave with you of Mrs. Alexander's for safe keeping to be delivered to Elmer G. Beasley after her death, and I think Will Henley spoke up and said about the same thing.

"Q. Then what was done? A. Mr. Pierce Dugan took a large envelope and put the papers in the envelope and sealed it and put on the back of the envelope, . . . 'M. A. Alexander papers left here by Elmer G. Beasley and Will Henley for safe keeping to be delivered to Elmer G. Beasley after the death of Mrs. Alexander.' That was all there was on it."

There was testimony by Mr. and Mrs. Simmons to the effect that, after this delivery of the deeds to the First National Bank, Mr. Simmons, who operated a sawmill, desired to buy some timber, and went to see Mrs. Alexander in regard thereto, and she told them she could not sell any timber or anything, as she had deeded her property to the appellants, and that all the deeds were in the First National Bank, and that neither she, nor any one else, could get them until her death, and she declined to sell any timber to Mr. Simmons. There were no others present at this time.

Another witness testified that she visited Mrs. Alexander before her death, and Mrs. Alexander being ill at the time, this witness asked about sending for Rufus Beasley, who lived in Arkansas, and Mrs. Alexander said not to send for him, that she had arranged her business like she wanted it, and that her brother, Rufus Beasley, might create some disturbance, and that she did not want him sent for, or words to that effect.

The evidence was conflicting as to exactly how Elmer G. and Persia Beasley treated Mrs. Alexander, whether they were considerate and kind to her, etc. Some of the

witnesses said that the appellants mistreated Mrs. Alexander's friends, and that on one occasion Mrs. Alexander followed a visitor out of the house and asked her not to pay any attention to the way she was treated, and not to stop visiting her. Other witnesses testified that they thought the relations were just like mother, daughter, and son, and that the appellants treated Mrs. Alexander as any children would treat their mother.

At the conclusion of the testimony, the chancellor held that the deed to what is known as the Line Creek Place was valid and vested title in Elmer G. Beasley, and dismissed the bill as to that part of the land. The chancellor decreed for the appellee Rufus F. Beasley as to the deed conveying the personal property of Mrs. Alexander, and as to the deed for the home place, holding that there was no delivery during Mrs. Alexander's lifetime, and that they conveyed no title. From this decree Elmer G. Beasley and Persia Beasley appeal.

It is said by appellee that one of the things which justified the decree was that the lands were not sufficiently described, that the description in the deed of April 17, 1930, was void, and likewise as to the description in the other deed.

It will be noted that the description in the deed dated April 17, 1930, is "South part of Northwest ¼, Section 18, Township 16, Range 4, containing 42 acres." This is said to be a void description. A description of the south part of a portion of land is capable of location by a surveyor. He could lay off forty-two acres so as to constitute the southern portion of that subdivision. Early & Co. v. Long, 89 Miss. 285, 42 So. 348; Goodbar & Co. et al. v. Dunn, 61 Miss. 618; Herod v. Robinson, 149 Miss. 354, 115 So. 40, and Harris v. Byers, 112 Miss. 651, 73 So. 614.

The same reasoning would also support the description reading, "16 acres North end of Southwest ¼, Section 18, Township 16, Range 4," and, "Northeast ¼

fractional less 10 acres Section 13, Township 16, Range 3, containing 120 acres, also North ½ of Southeast ¼, Section 13, Township 16, Range 3, containing 32 acres." It will be noted that the expression "less 10 acres" is the thing that is void, and not the description. It was held in the case of McAllister v. Honea, 71 Miss. 256, 14 So. 264, that: "If there be a patent ambiguity in the description of land excepted from a conveyance, the exception, not the deed, is void for uncertainty."

As to the description reading "North ½ of Southeast ¼ Section 13, Township 16, Range 3, containing 32 acres," the government description is sufficient. The statement, "32 acres," purports to be a statement of the acreage contained, without stating its location. The government description is not ambiguous, and this statement does not void it. But, regardless of that fact, the language in the second deed dated February 24, 1933, giving the boundary of the land on all sides, and describing the land, giving its name as generally known, as the "I. P. Beasley Old Home Place," is a sufficient description to convey said lands.

Appellee contends that the case of Hatchett v. Thompson, 174 Miss. 502, 165 So. 110, 113, clearly shows that this description is void. In that case, there was an assessment of seventy acres, and the assessment did not include the whole eighty acres, and furnished no guide as to where the seventy acres could be found, and we held that: "The assessment of the land in the case at bar did not furnish any guide as to where the 70 acres could be found. No surveyor could take the description in the deed and from it alone locate the property assessed. If there was an assessment on the whole 80 acres, a certain number of acres could have been excepted therefrom, but in the case at bar the assessment was not for the whole 80 acres, but only for 70 acres within an 80-acre description, and this 70 acres cannot be located with legal certainty. The description

in the other deed as the west three-fourths of the west half of the northwest quarter would be definite as a description of 60 acres and could be easily located."

It will be seen from this distinction in the two tracts, in the one, the west three-fourths of a given eighty was held to be a valid assessment of sixty acres which could be located on the west side, while the other was a description of seventy acres in a given eighty acres, and did not furnish any guide as to where this seventy-acre tract was, or where the ten-acre tract excepted was.

We think, therefore, that the description in the deeds in the case at bar conveyed title to the lands involved in this appeal. See 5 Mississippi Digest, title Deeds, Key Nos. 37, 38.

As to the delivery of the deeds to the bank to be delivered to Elmer G. and Persia Beasley, after the death of the grantor, we think that constituted a valid escrow, coming clearly within the principles announced and discussed in Wilson v. Bridgforth, 108 Miss. 199, 66 So. 524; and that the testimony of Mr. and Mrs. Simmons and W. M. Henley shows clearly and definitely that the deeds were placed in the bank, beyond the control of Mrs. Alexander, to be delivered to appellants after her death.

We do not consider that the opinion of W. M. Henley, that Mrs. Alexander could have recalled the deeds after they had been placed in the bank, amounted to any proof. It was what Mrs. Alexander directed to be done that will govern, not what W. M. Henley thought she could do, nor did his thought, being contrary to directions given him, alter the legal effect of the delivery of the deeds in escrow.

We think the chancellor was correct in holding that the deed to personal property was not a valid conveyance of the personal property. It clearly appears that it was intended to be effective only at the death of the grantor. There is no definite proof that it was ever delivered to the grantees, or to the bank.

Consequently, that part of the chancellor's decree is affirmed, and the part dealing with the two tracts of land embraced in the deeds above mentioned is reversed, and decree will be rendered here awarding the lands to the appellants, Elmer G. and Persia Beasley.

The costs of this appeal will be divided between the appellants and the appellee.

Affirmed in part, and reversed in part.