## KANSAS CITY SOUTHERN RY. CO. v. MARIETTA OIL CORPORATION et al.

### No. 8790.

Circuit Court of Appeals, Fifth Circuit.

March 23, 1939.

Edward S. Klein, W. Scott Wilkinson, and C. Huffman Lewis, all of Shreveport, La., for appellant.

Elmo P. Lee and J. D. Barksdale, both of Shreveport, La., for appellees.

Before HUTCHESON, HOLMES, and McCORD, Circuit Judges.

HUTCHESON, Circuit Judge.

The suit was for an injunction to prevent entry upon, to drill for oil on, the railroad right of way.

The claim was (1) that defendant had no right of any kind to the land, and there-fore none to prospect for oil or other minerals underlying it, and (2) that if it did have, such rights were held subject to the exclusive right of plaintiff to possess the right of way for railroad purposes.

The defense was (1) that defendant was the owner of the land and minerals, subject only to plaintiff's right of way easement, and (2) that the use defendant desired to make of the surface of the land was not inconsistent, but entirely consistent, with plaintiff's use of it for right of way purposes.

The District Judge, of the opinion that defendant was the owner of the land and minerals subject only to plaintiff's right of way, and that the operations for oil and gas defendant proposed to set on foot were not inconsistent, but entirely consistent with, plaintiff's use of the land for right of way, denied the injunction.

Appellant is here, insisting that there was error in both findings; that defendant owned an interest in the land, and that the use it proposed to make was not inconsistent, but consistent, with plaintiff's use of the land for right of way. These are the material facts.

On April 8, 1899, Lynn, and Big Pine, Lumber Companies under whom both plaintiff and defendant claim, executed a deed in fee to one W. B. Parker covering property described as follows: "The S. W. ¼ of the N. W. ¼ of Section 23, Township 23, Range 16 West, less a right of way 100 feet in width reserved for the Kansas City, Pittsburgh & Gulf Railroad Company through said land, in all 36, $3\frac{2}{33}$ acres."

On November 3, 1900 Lynn Lumber Company conveyed to the Kansas City, Shreveport & Gulf Railroad a right of way over and across "* * * also the West ½ of N. W. ¼ of Section 23 Range 16, West," reciting—"The right of way herein granted being 100 feet in width as now located." Plaintiff, holding under the Kansas City, Pittsburgh & Gulf and the Kansas City, Shreveport & Gulf Railroads, has been for many years and still is maintaining and using, and operating its trains over the right of way thus recognized and granted.

The defendant acquired its claims in 1936. This is its chain of title.

On November 16, 1910 the Big Pine Lumber Company of Arkansas conveyed to Big Pine Lumber Company, Ltd., of

Louisiana by specific description many sections of land, none of them the land in question here. The deed, however, concluded with an omnibus clause, "also all other lands or property of any kind whatever, situated in the Parish of Caddo that is owned by the Big Pine Lumber Company, or that it may own in the State of Louisiana." The land in question is in Caddo Parish, and defendant's claim is based upon this clause.

On March 18, 1936, one Clem Clarke obtained from Big Pine Ltd. a deed without warranty to a strip containing 3⅓ acres of land more or less, "being 100 feet in width * * * the same property now occupied by the Kansas City Southern Railroad as a right of way, * * *" the Lumber Company reserving a ⅓₂ mineral royalty.

In April, 1936, Clarke obtained a transfer, from Lynn Lumber Company stockholders, of all of its stock, property and assets. On May 21, 1936 by deed without warranty, Lynn Lumber Company conveyed the same strip to Clarke. On May 18 Big Pine and on May 21 Lynn Lumber Company conveyed a 25 foot strip adjoining and contiguous to the right of way, being half of a street which had been abandoned by action of the Police Jury of Caddo Parish.

On May 22, 1936 Clarke conveyed to Marietta Oil Company the rights and interest so acquired, and thereafter, under contract with that company for development, five locations were made along the East side of the right of way. The first well to be drilled under the plan was located 45 feet from the center of the main line of track, and 5 feet within the East line of the right of way.

There was considerable testimony on plaintiff's part, offered both at the time of the granting of a preliminary injunction, about a year before the trial on the merits, and at the trial, that it needed the right of way for its purposes, and further, that the drilling and operation of wells thereon would not only interfere with its use, but would be dangerous.

The District Judge found that the evidence as to danger to persons and property from the drilling and operation of wells on the right of way was to some extent conflicting, but that with modern means of protecting situations of this kind, drilling and operating for oil could be carried on with reasonable safety.

He thought the fact that the railroad company had leased for oil development a part of the right of way which it owned in fee was most significant evidence that such uses neither were, nor were considered to be, dangerous. He thought, too, that the contention of the plaintiff that it had need of that part of the right of way for additional switch tracks, vigorously advanced on the hearing for temporary injunction, was greatly weakened by the fact that though a year had passed since the granting of the injunction no move to lay such tracks had been made, and the peak of the business at that place had been long ago reached and business there was now on the decline.

So thinking, he took the view that the opposition of the railroad company was an arbitrary and unreasonable one, actuated not by a desire to protect its right of way from inconsistent uses, but by the desire to itself take and withdraw the oil underlying the right of way through wells which it had permitted its own lessee to drill. He thought, matters standing thus, that defendant should not be deprived of the right to develop its land, since, in the opinion of the court, it could do so without interfering with any legitimate right of way uses, and without any real danger of damage to person or property. He dissolved the interlocutory injunction and dismissed plaintiff's bill.

We think it quite clear that the decree must be reversed with instructions to reinstate the bill, and grant the injunction. It is quite plain that defendants are mere trespassers, without right, title or interest in or to the land involved or the minerals underlying it. It is equally plain that if they have title to the minerals they have no right to conduct drilling operations on the right of way to get them.

The District Judge assumed that the lumber companies, in their deed to Parker, intended to reserve and did reserve in themselves the title to the strip of land on which plaintiff had its right of way. We think there can be no doubt that such result was neither intended nor accomplished. What was intended and what was accomplished by the deed was to sell to Parker the whole 40 acres, the S. W. ¼ of the N. W. ¼ the deed described, subject to the railroad right of way. Parker, then, and not the lumber companies, was after and as the result of the conveyance, the owner of the fee, and defendant took

nothing by the conveyances from the lumber companies. Instead then, of being, as the District Judge found, the owner of the land and mineral rights subject to the right of way, defendant is one wholly without right, and as such clearly subject to be enjoined.

In Shell Petroleum Corporation v. Ward, 5 Cir., 100 F.2d 778, we have had recent occasion to give careful consideration to and to declare the effect of instruments and situations of this kind. As we there pointed out, descriptions such as the one in question here are, with almost complete uniformity, construed as not intending to reserve, and not reserving anything, in the grantor, but on the contrary, as passing to the grantee the whole of the tract described, subject only to the easement. That case, and those cited in it, dealt with private easements. By a much stronger reason a deed which, as here, refers in terms to a public easement, such as a highway or railroad right of way, will be construed as conveying to the grantee the fee to the property subject only to the public easement. Roxana Petroleum Corp. v. Sutter, 8 Cir., 28 F.2d 159; Midland Valley R. Co. v. Sutter, 8 Cir., 28 F.2d 163.

■ But if we could agree with the District Judge that defendant owned the fee, subject to the right of way, we still could not agree with him that such ownership would authorize its entry upon the right of way and exclusively appropriate to its own use any part of it. Wholly apart from the dangers attendant upon drilling or prospecting for oil on a railroad right of way, and we cannot agree with the District Judge that these are negligible, the defendant, though owner, would have no right to invade the right of way and withdraw permanently from use as such the portions of it appropriated to the well and its structures. Neither would it have the right to impose upon the right of way a servitude for getting to and conducting operations on the property, wholly inconsistent with the exclusive surface rights the railroad has.

■ We might assume, as some authorities hold, that the owner of the fee may make such temporary and occasional use of the right of way as does not exclude the owner of the right of way from its use. See 33 Cyc. 190; 22 R.C.L. Sec. 113, p. 862; 35 Tex.Jur. Sec. 106; Olive v. Sabine & E. T. Ry. Co., 11 Tex.Civ.App. 208, 33 S.W. 139, 142, though the weight of authority is, we think, to the contrary. Midland Valley R. R. v. Sutter, 8 Cir., 28 F.2d 163 and authorities supra. But we cannot, and do not, hold that a permanent appropriation of any part of it to an inconsistent use, such as drilling for oil, is justified or justifiable. Uvalde Rock Asphalt Co. v. Asphalt Belt Ry. Co., Tex.Com.App., 267 S.W. 688; Gladys City Oil, Gas & Mfg. Co. v. Right of Way Oil Co., Tex.Civ.App., 137 S.W. 171; Right of Way Oil Co. v. Gladys City Oil, Gas & Mfg. Co. 106 Tex. 94, 157 S.W. 737, 51 L.R.A.,N.S., 268.

Appellee insists that we are bound here not by general law, but by that obtaining in Louisiana. Of course we are. But no case is cited, none has been found, we may venture to say none can be, which supports the view advanced, that because the railroad company had leased, for the purpose of drilling for oil, a part of the right of way it owns in fee, it must, nolens volens, permit others to drill on its right of way.

In Texas, where it has been held that the owner of the fee may use a railroad right of way in any manner not inconsistent with its use as a right of way, the point made here has been carefully considered, and definitely rejected. Gladys City Oil & Gas Co. v. Right of Way Oil Co., supra.

Both then, because the defendant was wholly without right or interest in the property involved, and because, if it had an interest, the use it was threatening to make of the right of way was inconsistent with the paramount right of way of the plaintiff, the decree dissolving the temporary injunction was wrong. It is reversed, with directions to grant the injunction prayed for.