KROHN, et al. *v.* L. N. DANTZLER LUMBER Co.

In Banc. March 27, 1950.

No. 37434 (45 So. (2d) 276)

**Jo Drake Arrington,** for appellants.

J. I. Ford, for appellee.

**Lee, J.**

This suit was filed on December 22, 1945, by the heirs-at-law of L. Henry Krohn and wife, Margaret H. Krohn, against L. N. Dantzler Lumber Company, to recover the title to 30 acres of land, known as Cedar Lake Island, described in the bill of complaint. The prayer was for specific performance with equity; that the exhibit relied on constituted in fact a leasehold; that the court should declare an express trust existing; and cancel the com-

pany's title. The answer put these questions at issue. After hearing the evidence, the Chancellor dismissed the bill. From the decree entered, the heirs appeal.

Prior to March 29, 1919, L. Henry Krohn and wife, Margaret H. Krohn, owned this land. L. N. Dantzler Lumber Company desired to lease some of this acreage for a mill site. However, the land was under a deed of trust for $300.00, and the Krohns preferred to sell. After negotiations, on March 29th, they signed a deed in the company's offices for a consideration of $300.00, but, at the instance of the Company, carried it home with them to await the clearing of the title. The Company also paid off the deed of trust. On April 1st, an agent of the company went by to pick up the deed and make payment. Mr. Krohn, at that time, informed the agent that his wife wanted to back out, unless the company would agree to sell the land back to them, after the company was through with it. After some quibbling, the agent wrote out and delivered to Krohn the following instrument:  ·

"Mr. L. Henry Krohn
RFD #2 Biloxi, Miss.
"Dear Sir:

"This is to certify and to confirm the agreement that in part consideration of your and your wife's execution and delivery unto the L. N. Dantzler Lbr Co of a certain deed dated 29th day of March 1919 conveying to them the land known as 'Cedar Lake Island' located in parts of SW¼ of NE¼, E½ of SW¼ and NW¼ of SE¼ of Sec. 1, 7-10, it is agreed and understood that said L. N. Dantzler Lbr. Co. will reconvey the said Island unto you when they have abandoned the plant which they expect to erect thereon; reserving the right to remove any improvements and machinery.

"Yours very truly,
/s/ P. N. Howell, Agt.
L. N. D.—Lbr. Co.

"Dated April 1st 1919."

██ █ The Company erected its mill and carried on its operations until 1927, when it cut the last log. Immediately, it took up the rails on the 20 miles of track. It began tearing down and selling the tenant, and other, houses. The machinery was sold off as junk. The boilers alone remained, and the mill site grew up in briars.

The home of the Krohns was only one-fourth of a mile from the mill—they could see what was going on. During that year, Krohn said something to the company's agent about buying the property back. This agent had no recollection of the transaction, but assured Krohn that, if the company had agreed to do so, it would carry out its agreement. He further told Krohn, if he would submit an offer, the same would be promptly put up to the company. No offer was made. At no time did the Krohns seek to purchase, or take steps to enforce any claim which they had under the instrument above set out.

In 1938, Mrs. Krohn died. In 1940, two sons of the Krohns made claims to representatives of the company, but that was all. In 1942, Mr. Krohn died.

In the meantime, the company had executed several oil leases on this property, and permitted certain users to pipe water from the artesian well. Although the plant had been abandoned, the company, through all the years, remained in possession of the land, paying the taxes, and exercising all acts of ownership of which the lands were susceptible. In August 1945, the Navy opened negotiations for the lease of this property, but, it became noised about, the Krohns protested and the record does not reveal what happened.

Several errors are assigned, but, in view of our conclusion that the decree of the lower court should be upheld, we notice only one question.

The contract provided for a reconveyance "when they have abandoned the plant which they expect to erect thereon". The statement of the facts has shown the abandonment to be in 1927. Generally, the question

of abandonment depends on the particular circumstances of the case. Columbus & G. R. Co. v. Dunn, 184 Miss. 706, 185 So. 583. ■■ ■ The Krohns at that time, knew that, if they got the land back, they would have to pay, and the company would not reconvey it. This court has held that the statute of limitations begins to run against the vendee's action to recover the purchase money paid under an insufficient oral contract for the sale of land from the date the vendor declines to execute the agreement, or takes affirmative action equivalent to repudiation of the parol contract. Milam v. Paxton, 160 Miss. 562, 134 So. 171.

If they claimed the right of reconveyance, they were bound to bring their suit therefor within ten years from the date of the abandonment. Section 709, 710, Code of 1942; Tippin v. Coleman, 61 Miss. 516. An examination of Kennedy v. Sanders, 90 Miss. 524, 43 So. 913; White et al. v. Turner et al., 197 Miss. 265, 19 So. (2d) 825; Taylor v. Twiner et al., 193 Miss. 410, 9 So. (2d) 644, shows these cases are not in point against the question here.

They did not bring suit in their lifetime, nor was one filed until 17 or 18 years after the accrual of the right. The statutes of limitation were pleaded in bar of the action, and are effectual to bar all rights which the Krohns, their heirs or assigns had to a recovery.

Affirmed.