THE TEXAS COMPANY *v.* NEWTON NAVAL STORES CO., INC.

No. 39508 · March 16, 1955 78 So. 2d 751

*Welch & Gibbes,* Laurel; *John W. Kelly, Jr.,* New Orleans, Louisiana, for appellant.

*Newton & Blass,* Wiggins, for appellee.

Lee, J.

The bill of complaint of The Texas Company, a corporation, and the answer and cross bill of Newton Naval Stores Co., Inc., presented, in their final analysis, a controversy involving, as between them, title to gas, oil and minerals on about fifteen acres of land, as described in the pleadings. Other parties were joined; but by disclaimers or otherwise, they were eliminated. At the conclusion of the trial, the court denied the claim of The Texas Company, and granted the relief prayed for by the Newton Naval Stores Company. From the decree entered, The Texas Company appealed.

On March 25, 1944, Newton Naval Stores Company executed an oil and gas mining lease to J. R. Garrison on the following described land in Forrest County, Mississippi, to wit: "E ½ of Lot 6, Lots 7 & 8 (except G&SI RR Right-of-way through said lots) and Lots 9 & 10, and a parcel of land described as: beginning at the SE corner of Lot 11, and running thence North 1,298 feet, thence West 531 feet, thence South 1 degree east 365 feet, thence South 9.05 degrees east 304 feet to Public Road, thence South 50.45 degrees west 109 feet, thence South 63.08 degrees west 942 feet to SW corner of said Lot 11, thence East 1316 feet to the point of beginning; all lying and being in Section one (1), Township 1 South, Range 13 West."

A delayed semi-annual rental of $97.50, that is, $195 annually was provided for. It represented $1 an acre for 195 acres. There were 210 acres in the whole tract. The 200 foot strip in the right of way across the E ½ of Lot 6 and Lots 7 and 8 approximated fifteen acres. In due course the lease was assigned to The Texas Company, and when it applied for an ad valorem tax exemption, under House Bill 868, Laws of 1946, the acreage, claimed on account of this lease, was 195 acres.

The appellee had acquired this land many years before. The G & S I R R Company, at the time, was operating trains between Columbia and Maxie, Mississippi, over this right of way. But on April 22, 1933, it filed with the Interstate Commerce Commission an application to abandon this line; and on December 11, 1933, a certificate of the Commission for permission to abandon was issued; and thereafter in 1936 and in 1937, the railroad company took up its tracks.

The sole question is whether the phrase "except G&SI RR Right-of-way through said lots" excludes the strip of approximately fifteen acres from the lease.

In Black's Law Dictionary, Deluxe Edition, at p. 1561, it is said that: "Right of way has a twofold significance, being sometimes used to mean the mere intangible right to cross, a right of crossing, a right of way, *and often used to otherwise indicate that strip of land which a railroad appropriates to its own use, and upon which it builds its roadbed.*" (Emphasis supplied.)

It is true that the conveyance of a 200 foot right of way for a railroad does not convey the land, but merely a right of passage through it. In N O & N E R R v. Morrison, 203 Miss. 791, 35 So. 2d 68, the strip was not identified with certainty, and it was there held to be "only a floating easement or right of user."

But in this case the evidence showed that the G & S I R R Company in 1933 had obtained authority to abandon its line of railroad, and that pursuant to such authority, it did, in fact in 1936 and in 1937 take up its tracks, and consummate the abandonment. Cf. Krohn v. L. N. Dantzler Lbr. Company, 208 Miss. 691, 45 So. 2d 276. Since the right of way through the lots was abandoned, there no longer remained any right on the part of the railroad company to cross over the lots. Its easement was dead. It seems altogether unlikely that the appellee, by the use of that phrase, meant merely to exclude the dead easement of the railroad company.

On the contrary, the strip of land was visible and was capable of an easy identification. The appellee, after the abandonment, became the fee owner also of the surface of the right of way. █ It seems inescapable that, in excepting the right of way from the lease, the appellee purposed and intended to except the strip of land situated in the railroad right of way through the lots.

The exception of the right of way cannot be said to be so vague as to be void for uncertainty under the rule that "in order to except certain property out of a conveyance, which without the exception would carry all, the words of exception must be as definite as those required to convey title; and that, if they are not so, the whole property passes." Richardson v. Marqueze, 59 Miss. 80, 42 Am. Rep. 353; McAllister v. Honea, 71 Miss. 256, 14 So. 264; Nunnery v. Ford, 92 Miss. 263, 45 So. 722; Beasley v. Beasley, 177 Miss. 522, 171 So. 680; and Ates v. Ates, 189 Miss. 226, 196 So. 243.

Appellant seems to rely largely on N O & N E R R v. Morrison, supra, Kansas City Southern Railway Company v. Marietta Oil Corporation, 102 F. 2d 603 ( C C A 5 1939) and Shell Petroleum Corporation v. Ward, 100 F 2d 778 (C C A 5 1939). But in the first two cases, the railroad companies were then still operating their lines. In the last case, the irrigation canal was likewise still in operation. In each instance, those rights of way were being used, and of course, constituted mere easements. Obviously conveyances, in which they were excepted, simply excluded the easements.

But in the case here, the G & S I R R Company had abandoned the operation of its railroad, and the full title had become vested in the appellee. Hence the exception of the railroad right of way through the lots excluded the strip of land formerly occupied by the railroad.

While great weight is to be given to the construction placed by the parties on a deed, when it is doubtful, Cummings v. Midstates Oil Corporation, 193 Miss. 675, 9

So. 2d 648, the inquiry of Robert M. Newton, President, concerning his unexpressed intentions at the time of the execution of the lease was improper. However, this was harmless in view of the obvious exclusion of the right of way.

The proof showed that the royalty purchasers, at the time of their purchases, fully understood that the right of way was excepted from the original lease. Hence, those deeds did not constitute a ratification or confirmation that the original lease embraced the right of way.

From which it follows that this cause must be, and is, affirmed.

Affirmed.

*McGehee, C. J., Roberds, Hall, Kyle* and *Arrington, JJ.,* concur. *Holmes, J.* took no part.

GILLESPIE, J., dissenting.

The question in this case involves the meaning and effect of the parenthetical clause in the description contained in the oil, gas and mineral lease as follows: ". . . except G&SI RR Right of way through said lots."

An oil, gas and mineral lease conveys an estate in lands, a determinable fee to the underlying minerals and the use of the surface for various purposes such as the laying of pipelines, building tanks, structures, etc. The courts have applied to such leases the rules applicable to other conveyances involving land except that various clauses in such leases, which have been written and developed by the oil industry, are construed favorably to the lessor.

The lease in question contained what is usually called the "Mother Hubbard" clause following the description in the following words: "It is the intention of the lessor and lessee that this lease shall also include, and there is hereby included and leased for the purposes and con-

sideration herein stated, all the land owned and claimed by lessor adjacent or contiguous to the land above described, whether in the same or different surveys . . ."

Courts have not looked with much favor on this clause in leases. It would serve no purpose to discuss that clause except to say that it should be given some effect. I think the correct application of that clause is to clear minor defects in descriptions and to close up gaps, wedges and omitted strips. This case, I think, is a typical one for the application of the clause; to do so would prevent an unreasonable result.

In considering the exception here involved, certain of the rules governing the construction of conveyances should be stated. A comprehensive rule for the construction of a deed is found in the Court's opinion in the case of Dunn v. Stratton, 160 Miss. 1, 133 So. 140, as follows:

"It is the duty of courts in construing deeds to effectuate the intentions of the parties, but since deeds must be in writing, the intention must be found in the writing either by way of complete delineation of the description on the face of the deed or by dependable references therein made, which, when applied, render the delineation complete. The sundry rules that have been formulated by the courts for the interpretation of descriptions are but aids in arriving at the probable true intention of the written instrument. These rules, so far as applicable to this case, may be summarized thus: In construing a deed, (1) effect must be given, if possible, to each item of the written contents and no item included in the deed as a part of the description is to be rejected as erroneous, or shall be varied, so long as it is reasonably possible to make all of them harmonize; and, (2) those parts which are the more certain and dependable as descriptive items will interpret those items which are the less certain and dependable, and, when it is necessary in order to satisfy and harmonize all items,

the more certain will, if reasonably possible, draw to themselves those that are the less certain; and, (3) if any item is to be rejected as impossible, or varied as erroneous, the item which is the less certain and about which it is the most probable that the grantor was mistaken will be thus rejected or varied."

In Stuart v. McCoy, 163 Miss. 551, 141 So. 899, this Court said: "Where the language of a deed or lease is unambiguous, the object is to ascertain the intention of the grantor as expressed by the language used, and not the unexpressed purpose which may at the time have existed in his mind, the question being not what the parties meant to say, but the meaning of what they did say, the actual intention contrary to the legal effect of the deed being immaterial, even though apparent from that instrument itself."

"When a person takes part in a bilateral act — i. e. a transaction in which other persons shared — he must accept a common standard; he cannot claim to enforce his individual standard of meaning. The other party or parties are entitled to charge the speaker with the standard accepted as common." Wigmore on Evidence, Sec. 2466.

The majority concedes the rule to be as stated in Richardson v. Marqueze, 59 Miss. 80, as follows:

"The rule is well settled that in order to except certain property out of a conveyance, which without the exception would carry all, the words of exception must be as definite as those required to convey title; and that, if they are not so, the whole property passes." Other cases holding the same are cited in the majority opinion.

In N. O. & N. E. RR. Co. v. Morrison, 203 Miss. 791, 35 So. 2d 68, the conveyance was of "a right of way for 200 feet, through the following lands, towit" (describing the land). The Court, in holding that the deed did not convey the land, but only an easement, said, "Let us examine the deed. By its language it conveyed a 'right

of way.' It did not convey land, but a right (of passage) 'through' the land.''

The rule as to exceptions is the same as those required to convey title. The Morrison case is conclusive of the question here involved. The only way this case can be squared with the rules of construction hereinabove set out, including the rule laid down in Dunn v. Stratton, supra, is to hold that the exception contained in the lease was an exception of the easement of the railroad and a limitation on the warranty of the lessor — that the lessor excepted only what he said he excepted, that is, the G.&S.I. right of way through said lands. To hold otherwise is to add to the words of exception a meaning not therein contained.

Many cases have decided the point here involved holding that only the easement was excepted. In Lewis et al., v. East Texas Finance Co., et al., 146 S. W. 2d 977, the Supreme Court of Texas had before it a lease where a road was excepted, and laid down the following rule: ''(c) An instrument of conveyance which conveys land definitely described in such instrument, and then excepts from such conveyance a road, railroad right of way, canal right of way, etc., as such, occupying a mere easement on, over or across the land conveyed, conveys the fee to the entire tract, and the exception only operates to render the conveyance or grant subject to the easement. Bolton v. Dyck Oil Co., Tex. Civ. App., writ dismissed W.O.J., 114 S. W. 2d 299; Penn v. Holland, Tex. Civ. App., writ refused, 105 S. W. 2d 351; Shell Petroleum Corp. v. Ward, 5 Cir., 100 F. 2d 778; Kansas City Southern Ry. Co. v. Marietta Oil Corp., 5 Cir., 102 F. 2d 603; Cox v. Campbell, Tex. Sup., 143 S. W. 2d 361; Rio Bravo Oil Co. v. Weed, 121 Tex. 427, 50 S. W. 2d 1080, 85 A. L. R. 391; Devlin on Deeds, 3rd Ed., p. 1851, Sec. 989; 18 C. J., p. 338; Thompson on Real Property, Sec. 3205.''

In Rock Island, A. & L. Railroad Company v. Guillory, et al., 205 La. 154, 17 So. 2d 17, and oil, gas and

mineral lease there involved described the lands by governmental survey with the statement, "less right-of-way for railroad." The Court said: "It is our conclusion that the strip of land involved (right of way) was included in the intervenor's mineral lease, but the lessee's rights were subject to the plaintiff's servitude or right of way."

In the case of Jennings v. Amarado Petroleum Corp., 66 Pac. 2d 1069, the deed there involved described the lands by governmental subdivision and then followed the following words: "Less the right of way of the Little River Drainage Ditch containing 13.51 acres and except right of way of M.K. & T. Ry. Co." The case presented the question whether the language above quoted was sufficient to constitute a reservation of title in the grantor to the 13.51 acres described as containing the right of way of the Little River Drainage Ditch. The Court, in that case, said: "An examination of the authorities reveals the fact that the language of the exception contained in the granting clause has a well-defined and accepted meaning; that when so appearing the purpose and office thereof is not one of reservation but rather of limitation; and that thereunder the grantor conveys all of his interest in the servient estate and expressly recognizes and acknowledges the dominant estate in the absence of clear and unequivocal language to the contrary, reserves no title to the grantor . . . And as also said in the case of Shell Petroleum Corp. v. Hollow, (C.C.A.) 70 F. (2d) 811, 814: 'Decisions could be multiplied holding that the servient estate in a small tract, usually in the form of a strip set apart for highway or railway right of way purposes, passes with a conveyance of the fee to the abutting tract of which the strip formerly was a part. The servient estate passes with such a conveyance, even though no express provision to that effect is contained in the instrument. The rule is that such estate passes unless it is excluded by clear, unequivocal, and unmistakable language.' "

The title to minerals under the right of way under a railroad was involved in a case of Kansas City So. Ry. Co. v. Marietta Oil Company, et al., 102 F. 2d 603 (C.C.A. 5th, 1939). A lumber company, the owner of 40 acres of land through which the railroad ran, conveyed to one Parker, describing the land as follows:

"The SW ¼ of the NW ¼ of Section 23, Township 23, Range 16 West, less a right of way 100 feet in width reserved for the Kansas City, Pittsburgh and Gulf Railroad Company through said land, in all 36 and 32/33 acres."

The following year the lumber company conveyed a right of way across the land to the railroad, "the right of way herein granted being 100 feet in width as now located." In 1936, the lumber company conveyed the right of way to one Clark, who conveyed to the Marietta Oil Company. The suit was by the appellant for injunctive relief against the oil company who claimed under the deed from Clark. The Court in that case said:

"The District Judge assumed that the lumber companies, in their deed to Parker, intended to reserve and did reserve in themselves the title to the strip of land on which plaintiff had its right of way. We think there can be no doubt that such result was neither intended nor accomplished. What was intended and what was accomplished by the deed was to sell to Parker the whole 40 acres, the SW ¼ of the NW ¼ the deed described, subject to the railroad right of way. Parker, then, and not the lumber companies, was after and as the result of the conveyance, the owner of the fee, and defendant took nothing by the conveyances from the lumber companies. Instead, then, of being, as the District Judge found, the owner of the land and mineral rights subject to the right of way, defendant is one wholly without right, and as such clearly subject to be enjoined.

"In Shell Petroleum Corporation v. Ward, 5 Cir., 100 F. (2d) 778, we have had recent occasion to give careful consideration to, and to declare the effect of,

instruments and situations of this kind. As we there pointed out, descriptions such as the one in question here are, with almost complete uniformity, construed as not intended to reserve, and not reserving, anything, in the grantor, but on the contrary, as passing to the grantee the whole of the tract *described, subject only to the easement.* That case, and those cited in it, dealt with private easements. *By a much stronger reason a deed which, as here, refers in terms to a public easement, such as a highway or a railroad right of way, will be construed as conveying to the grantee the fee to the property subject only to the public easement.* Roxana Petroleum Corporation v. Sutter, 8 Cir., 28 F. 2d 159; Midland Valley R. Co. v. Sutter, 8 Cir., 28 F. 2d 163.'' (Emphasis added).

Shell Petroleum Corporation v. Ward, 100 F. 2d 778 (C.C.A. 5, 1939), was a suit for the title and possession of 5.6 acres of land, occupied by a right of way for an irrigation canal, and came up from Texas. The claim was that though included within the metes and bounds, it had been excepted out of a conveyance that plaintiffs had made. The defense was, that having been referred to in the deed as ''taken up by the rights of way of the Neches Canal Company's lateral'' it had been excepted not from the conveyance, but only from the warranties.

Ward was the common source of title, conveying a right of way to the canal company in 1913 and providing therein that the title would revert to him and his heirs if abandoned. ''The deed under which appellant, the defendant below, holds was dated November 23, 1917. For a recited consideration of $4,692.00 it sold and conveyed to Gregory by metes and bounds, including withing them the 5.6 acres in controversy, a tract of land described in the conveyance as 'containing 162 acres of land.' ''

The material parts of this deed are: '' . . . have granted, sold and conveyed, and by these presents do

grant, sell and convey unto the said (Gregory) all that certain tract or parcel of land situated in Jefferson County, State of Texas, and being a part of the Alexander Horton one-fourth league survey, described as follows . . . containing 162.00 acres of land save and except therefrom 5.6 acres taken up by the rights of way of the Neches Canal Company lateral, making 156.4 acres herein and hereby conveyed.''

Then followed a clause of general warranty of title. The court, again speaking through Chief Judge Hutcheson, said:

''It is a principle of universal application that grants are liberally, exceptions strictly, construed against the grantor, 8 R.C.L. 1094; 14 Tex. Jur. 926; Curdy v. Stafford, 88 Tex. 120, 30 S. W. 551; Barker v. Lashbrook, 128 Kan. 595, 279 P. 12; Bolton v. Dyck Oil Co., Tex. Civ. App., 114 S. W. 2d 299; Jones v. Sun Oil Co., Tex. Civ. App., 110 S. W. 2d 80; Higdon v. Nichols, 204 Ky. 56, 263 S. W. 665.

''This principle is especially vigorous in operation, where, as here, a construction is contended for which would produce the unreasonable result of splitting into two pieces a tract of land, which existed as one tract, subject only to an easement, and which, in reason, must be considered to have been conveyed as such, and not to have been split into separate parts, with a thin wedge of land between.''

Later in the decision, the court said:

''If construed as appellee would have it, a result both unreasonable and clearly unintended would have been produced. For it is inconceivable that Gregory, plaintiffs' grantee, would have bought a tract of land split into two tracts by a small narrow strip which the Canal Company was not only authorized to use as a lateral, but if appellees are right, appellees would be entitled, under the restrictions in the Canal deed, to close up and occupy and thus cut appellant's land in two.

"If construed as appellant contends it should be, every part of the deed would be harmonized and reconciled, and a result would be produced both reasonable and without doubt, in accordance with what the parties to the deed intended."

In general, an exception which excepts or excludes from the grant a previously granted right of way over described property excepts or excludes merely an easement and not the fee to the realty used for the right of way.

The fact that the proof showed that there were 210 acres in the tract of land, including the right of way of the railroad and the acreage was given as 195, is not important according to the authorities. The lease here involved stated, following the description, "for the purpose of determining the amount of any money payment hereunder, said premises shall be treated as comprising 195 acres, whether there be more or less." It, therefore, appears that the parties contemplated that the amount of acreage was not certain. The rule is well settled that where the excepted right of way is omitted from the total acreage is unimportant in determining whether the fee was excepted.

Where a deed by specific metes and bounds conveyed land "containing 87 acres after deducting the right of way of said O. & H. R.R." and land when subsequently surveyed contained 93.1 acres of land, the excess acreage could not be given any weight in arriving at intention of parties as to whether grantor conveyed a fee subject to easement of railroad, since acreage is of but little weight in construction of a deed except where conveyance is by the acre. Bolton v. Dyck Oil Company, supra; Footnote, 26 C. J. S. 460.

The majority opinion seems to give a great deal of weight to the alleged abandonment of the railroad by the G.&S.I. Railroad Company. We do not think that it can be said, or that the lower court could have found, that the railroad had abandoned its right of way. It

should be borne in mind that the case of N.O. & N.E. Railroad Co. v. Morrison, supra, had not been decided when this lease was executed. Ample evidence appears in the record that the railroad had not abandoned its right of way which it had gotten by a solemn deed. The right of way was plainly visible and existing at the time of the execution of the lease in question, only the tracks had been removed, and of course, it was not being used for railroad purposes. But the railroad company executed three instruments involving this particular right of way after the appellee granted the lease in question. The G. & S. I. Railroad Company deeded the right of way to the Illinois Central Railroad Company, the Illinois Central executed a mortgage on the right of way and granted two mineral leases on the railroad right of way — all after the date of the lease in question. I am of the opinion that the fact that the tracks had been removed has no bearing whatsoever on this case. The plain words of the exception mean that appellee excepted not the lands under the right of way, nor anything other than the right of way that the railroad held. If the railroad had no right of way, nothing was excepted. If the railroad had a right of way, its easement was excepted.

My conclusion is that when the exception involved in this case is measured by the established rules of law applicable thereto, that appellee conveyed by the lease all the minerals it owned in the lots described; and that the exception was nothing more than the recognition of such right as the railroad had, if any, to an easement through the lands and a protection of lessor's warranty. This recognition serves to limit the lessor's warranty, and it is the method so universally employed by those preparing conveyances and leases that to be there can be no doubt of its effect. In my opinion, the construction sought by appellant would not only be in accord with the overwhelming weight of legal authority, but it

would produce a result that would be reasonable, a virtue I fail to observe in the opposite result.

I think the case should be reversed and judgment entered here for the appellant.

*Ethridge, J.,* joins in this dissent.