601 So.2d 834 (1992)
Jesse L. CRUM
v.
Byron E. BUTLER.
No. 89-CA-0298.
Supreme Court of Mississippi.
June 3, 1992.
*835 H.E. Horne, Jr., Centreville, for appellant.
F.W. Stratton, Liberty, Cynthia D. Davis, Gloster, for appellee.
Before ROY NOBLE LEE, C.J., and PRATHER and SULLIVAN, JJ.
SULLIVAN, Justice, for the Court:
In 1883, David Day and others conveyed to the New Orleans and Mississippi Valley Railroad Company a 100 foot wide right of way through their lands in Amite County. The right of way was for the purpose of constructing and operating a railroad line. The right of way would extend fifty feet on either side of the center of the railroad.
On January 21, 1887, Day conveyed to the Louisville New Orleans and Texas Railroad Company a strip of land 100 feet wide, being 50 feet on each side from the centerline. The right of way was to extend over any lands owned by Day over which the railroad needed to run. On October 22, 1888, Day conveyed to the Louisville New Orleans and Texas Railroad Company an additional 100 feet on each side of the centerline of the railroad.
The Illinois Gulf Central Railroad was the successor in interest of both the New Orleans and Mississippi Valley Railroad Company and the Louisville New Orleans and Texas Railroad Company. Byron E. Butler came to own property in Amite County, which descended to him by means of inheritance from his great-grandfather, David Day. The Illinois Gulf Central Railroad at one time ran through the northeast corner of Butler's property. By a decision of the Interstate Commerce Commission, dated January 14, 1985, Illinois Gulf Central was allowed to abandon the line of railroad that partially ran through Butler's property.
On July 9, 1987, Jessie L. Crum paid Illinois Gulf Central $15,000.00 for a quit-claim deed to all of its right, title, interest, and claim in and to land and property in Amite County along the abandoned railroad line. The railroad also conveyed its title and interest in the ballast rock located on the railroad line.
On February 15, 1988, Butler filed a complaint to cancel a cloud on his title. Butler alleged that the rights of way described in the deeds of 1883 and 1887 are lands which now belong to him. He was uncertain about the description in the 1888 deed but he included it because it could affect title to his land. Butler contended that the deeds conveyed only a surface easement and that upon abandonment the land reverted to the landowners adjoining the right of way. *836 Any conveyance to Crum by Illinois Gulf Central constituted a cloud on his title and should be cancelled. Butler further contended that the conveyance of the ballast rock by Illinois Gulf Central was a sale of property that the railroad no longer owned. Butler's theory was that the ballast became part of the real estate and could not be removed.
The case came on for trial before Chancellor R.B. Reeves in the Chancery Court of Amite County on October 4, 1988. The chancellor dismissed the complaint as it regarded the 1888 deed as neither the chancellor nor the parties were able to determine whether or not that conveyance was within the calls of the property in dispute.
The chancellor found that under the 1883 and 1887 deeds, only a right of way for railroad purposes was conveyed. The right of way terminated when the railroad was abandoned. The chancellor held that Crum, therefore, acquired no interest in the right of way described in the 1883 and 1887 deeds. The deed from Illinois Gulf Central was cancelled as a cloud on Butler's title.
The chancellor was also of the opinion that the ballast constituted a permanent improvement and was a part of the realty. The chancellor held that even if the ballast were considered personal property, it had not been removed within a reasonable time, and it too was found to be the property of Butler.
Crum appeals and assigns two errors:
1. Whether or not the trial court erred in ruling that the instruments of March, 1883, and January, 1887, were conveyances of easements only and the effect and validity of each; and
2. Whether or not the trial court erred in ruling that the ballast rock belonged to the plaintiff, Byron E. Butler.

I.

DID THE CHANCELLOR ERR IN RULING THAT THE INSTRUMENTS OF MARCH, 1883, AND JANUARY, 1887, WERE CONVEYANCES OF EASEMENTS ONLY?
The 1883 deed reads:
J.R. JACKSON ET AL. TO RIGHT WAY N.O. AND M.V.R.R. CO.
GRANT OF RIGHT OF WAY TO THE
New Orleans and Mississippi Valley Rail Road Company or such name as said Railway hereafter adopt for said Railway. This indenture made and entered into this ____ day of ____ A.D. 188_ by and between the undersigned owners of Lands in Amite Co. parties of the first part and the New Orleans and Mississippi Valley Rail Road Company or such name as may be adopted [by the] party of the second part. Witnesseth, That for and in consideration of the benefits and advantages to be derived from the construction of a Railroad through their property, the said parties of the first part have granted, bargained and sold and by these presents do grant, bargain and sell unto the said party of the second part a right of way One Hundred Feet wide through the lands belonging to said parties of the first part more particularly described as follows, to-wit: Said lands of the undersigned in the County of Amite, State of Mississippi. The said right of way to extend fifty feet on each side of the center of a Railroad to be constructed by the party of the second part on such line as the said party of the second part may hereafter adopt as a permanent location for its road. To have and hold unto the said party of the second party and assigns forever for the purposes hereinafter Specified and none other, that is to say for the purpose of building, constructing and operating a line of railroad on said right of way. And the said party of the second part shall have the right to dig earth, quarry rock, Cut timber and do such other things on said right of way as are necessary and convenient in constructing and operating its line of Railroad thereon and to fell any timber beyond the right of way herein granted which is sufficiently near the track of said road to fall on and obstruct the same. The party of the second part agrees and binds itself to construct and maintain such drains as *837 will prevent the railroad from interfering with the drainage of the property. It is understood that should the railroad herein mentioned not be built within eighteen months from the date hereof then this Contract shall be null and void. It is understood that the parties of the first part shall have the right to cultivate any portion of the land included in this right of way and actually used and occupied by the party of the second part in constructing and operating of their said Railroad.

In witness hereof the parties of the first part have hereunto set their hands Seal the day and year first above written:

 Sept. 4th J.L. McLain (SEAL)
 Sept. 9th H.H. Ratcliff (SEAL)
 Sept. 9th D. McNeil (SEAL)
 Sept. 9th E.B. McLain (SEAL)
 Sept. 11th J.M. Tatum (SEAL)
 Sept. 11th J.R. Jackson (SEAL)
 Sept. 12th J.C. McNeil (SEAL)
 Sept. 13th David Day (SEAL)
 Sept. 13th David F. Crum (SEAL)

(Emphasis Added).
In reliance on Miss. Code Ann. § 89-5-1 (1972), Crum contends that this instrument should be given no credence as it was without an acknowledgment.[1] That statute reads:
Except in cases governed by the Uniform Commercial Code or otherwise specially provided for by the law, a written instrument of or concerning the sale of lands, whether the same be made for passing an estate of freehold or inheritance, or for a term of years, or for any other purpose, or any writing conveying personal estate, shall not be admitted to record in the clerk's office unless the execution thereof be first acknowledged or proved, and the acknowledgment or proof duly certified by an officer competent to take the same in the manner directed by this chapter; and any such instrument which is admitted to record without such acknowledgment or proof shall not be notice to creditors or subsequent purchasers for valuable consideration.
The Legislature has enacted a statute to cure any defect in an acknowledgment of a deed that has been of record twenty (20) years or more. An acknowledgment to such a deed is presumed to be on lawful authority and is good despite any defects. Miss. Code Ann. § 89-5-13 (1972). However, a curative statute does not cure any defect and cannot be held to supply an acknowledgment when in fact there is no acknowledgment. An unacknowledged deed is not available for recordation nor is it effective against third parties. Cotton v. McConnell, 435 So.2d 683, 687 (Miss. 1983).
Butler argues that the absence of the acknowledgment worked no harm, because the very existence of the railroad track provided actual notice to all the world that someone believed it had a right to be there. Crum received his conveyance from the railroad, therefore, he should have been aware that the railroad received the land somehow. Also, the deed was actually recorded and provided actual notice to anyone who examined the records. The acknowledgment does not affect the validity of the deed, but only its admittance to record. See, Miss. Code Ann. § 89-3-1 (1972). Under the facts in this case the 1883 deed was effective against Crum.
The well known rule in this State is that a deed must be construed as a whole without separating it from its formal parts and that the intent of the parties may be gathered from the instrument. When the meaning of the language is to be determined, the intent of the parties expressed in the language they used must govern. Manson v. Magee, 534 So.2d 545, 548 (Miss. 1988).
There are some general rules that make the construction of these types of deeds less difficult. Where the instrument specifically conveys a right of way, then the deed will be construed as intending to convey only an easement. New Orleans & *838 Northeastern Railroad v. Morrison, 203 Miss. 791, 35 So.2d 68 (1948); Williams v. Patterson, 198 Miss. 120, 21 So.2d 477 (1945). Instruments that specifically refer to a strip, parcel, or tract of land have been held to convey a fee. Alabama & Vicksburg Railroad Co. v. Mashburn, 235 Miss. 346, 109 So.2d 533 (1959); Mississippi Central Railroad Co. v. Ratcliff, 214 Miss. 674, 59 So.2d 311 (1952). The difficulty comes when the deed contains a mixture of both ideas, where it mentions both a piece, a parcel, or a strip of land and a right of way. It is here that the instrument becomes unclear and leans toward ambiguity.
This brings us to the case relied on most heavily by Crum, Dossett v. New Orleans Great Northern Railroad Company, 295 So.2d 771 (Miss. 1974). In that case the grantors did "grant, sell, assign, convey and warrant" to the railroad "a strip of land for a right of way." After considering our previous decisions on this issue, this Court was of the opinion that the language of the deed indicated the sale of land, rather than a right to the use of the land. This Court said that the language of the deed was unclear and ambiguous and that the legal rules of construction in such circumstances favored the grantee over the grantor and held that the deed was a conveyance of fee. Id. at 775.
The 1887 deed reads:
DAVID DAY DEED TO L.N.O. AND T.R.R.C.
For the consideration of Eight Hundred Dollars to me paid, receipt whereof is hereby acknowledged, I hereby give, grant, bargain, convey and sell to the Louisville New Orleans and Texas Rail Road Company for Right of Way, a strip of land 100 feet wide that is 50 feet on each side of the center of the Road bed now constructed thereon and through and across Section 20, Lots 2, 3, 4 & 5 of Section 21, Section 13, SE/4 of SW/4 of Section 29. SE/4 of NW/4 and W/2 of NW/4 of Section 31, Section 30 Township 4, Range 1 East and Section 36 in Township 4 Range 2 East, situated partly in Amite and partly in Wilkinson Counties Mississippi and extending over and across any other lands owned by me in said Counties. To have and to hold unto the said Rail Road Company and its assigns forever for the purpose of building and constructing and operating a line of Rail Road on said Right of Way and the said Rail Road Company to have the right to dig earth, quarry rock, cut timber and do such other things on said right of way as are necessary and convenient in constructing and operating its line of Rail Road thereon, and to fell any timber beyond the right of way herein granted, which is sufficiently near the track of said Road to fall on and obstruct the same.
Witness my Signature this the 21st day of Jany [sic] 1887.
David Day
(Emphasis Added).
When we compare the 1883 deed and the 1887 deed it is clear that the grantors in the 1883 deed intended only to convey a right of way. The instrument states that they did "grant, bargain and sell ... a right of way 100 feet wide through the lands... ." The grant was for the purpose of building, constructing and operating a line of railroad on the right of way and none other. The instrument specifically points out that it is a grant of a right of way through the land and not a grant of the land. The chancellor correctly held that the 1883 deed granted merely an easement.
Crum argues that Dossett controls. Crum contends that the chancellor gave undue influence to the term "right of way" in accepting it to mean merely an easement or right to cross. Citing Texas Company v. Newton Naval Stores, 223 Miss. 468, 78 So.2d 751 (1955), 49 A.L.R.2d 1182, Crum contends that the term "right of way" has a two fold significance; one being a mere intangible right to cross and the other indicating a strip of land which a railroad appropriates for its use.
We are struck by the fact that both the 1883 deed and the 1887 deed clearly point out that the conveyances were for the purpose *839 of constructing and operating a railroad on the right of way. Such a clause is absent from the Dossett deed.
The 1887 deed in its granting provision conveys "for a Right of Way, a strip of land" to the railroad. The habendum clause of the deed provides that the conveyance is to the railroad and "its assigns forever for the purpose of building and constructing and operating a line of Rail Road ..." Dossett does not control as the Dossett deed did not contain the language contained in both the 1883 and the 1887 deeds that the conveyance was for the purpose of building and constructing a railroad on the right of way.
The instruments here are unclear and ambiguous. Where terms of a contract are vague or ambiguous, they are always construed most strongly against the party who drew it. Kight v. Sheppard Building Supply, Inc.; 537 So.2d 1355, 1358 (Miss. 1989); Stampley v. Gilbert, 332 So.2d 61, 63 (Miss. 1976). The 1883 deed and the 1887 deed were prepared not by Day, but by the railroad.
We are of the opinion that the chancellor correctly ruled that the 1887 deed also conveyed merely a right of way.

II.

DID THE CHANCELLOR ERR IN RULING THAT THE BALLAST ROCK BELONGS TO THE PLAINTIFF, BYRON E. BUTLER?
Where a railroad only has a right to an easement under a deed, abandonment of the right of way causes the title or right to the land to revert to the grantor, his heirs, his successors in title, or to the then owner of the subservient estate. 74 C.J.S. Railroads § 117(e). Ordinarily tracks, railroad structures, and other railroad equipment do not become part of the realty and such items belong to, and may be removed by, the railroad company, or its assignee, on abandonment of the right of way or within a reasonable time thereafter. 74 C.J.S. Railroads § 117(d).
These deeds conveyed only an easement and the ballast rocks still belonged to the railroad and could be removed by them or their assignees within a reasonable time. The effective date of the abandonment of the railroad was in 1985 and Crum, if he obtained title, did not do so until 1987. Butler's suit was filed in 1988. Three years had passed since the abandonment of the right of way by the railroad. The chancellor found that the three year period was beyond the reasonable amount of time to remove the ballast. In this finding the chancellor was clearly wrong.
Crum could hardly go on the land during the pendency of the lawsuit or during the pendency of this appeal. The ballast did not become a part of the real property and it did therefore belong to the railroad and they could, and did, legitimately convey it to Crum.
A reasonable time for Crum to remove the ballast from the land has not yet passed.
We therefore affirm the chancellor on his finding that the deeds of 1883 and 1887 conveyed merely an easement and hold that he correctly cancelled the deed to Crum as a cloud on the title of Byron E. Butler. However, the chancellor was incorrect in ruling that the ballast was a part of the real estate and also belonged to Butler. We therefore reverse the chancellor's finding on the ownership of the ballast and render judgment in favor of Crum and remand this case to the Chancery Court of Amite County, Mississippi, for a determination of reasonable time and method for Crum to go upon the property of Byron E. Butler and remove the ballast which he purchased from the railroad.
AFFIRMED IN PART; REVERSED AND RENDERED IN PART; AND REMANDED TO THE CHANCERY COURT OF AMITE COUNTY.
ROY NOBLE LEE, C.J., HAWKINS, and DAN LEE, P.JJ., and PRATHER, ROBERTSON, PITTMAN and BANKS, JJ., concur.
McRAE, J., concurs in part and dissents in part without separate written opinion.
NOTES
[1] The deed was acknowledged by three of the grantors, but not by the remaining six, David Day being one of them. Such an acknowledgment is insufficient as to those not acknowledging. Bell v. Savage, 60 Cal. App. 149, 212 P. 404 (1922).