925 So.2d 870 (2005)
Wendall HARRELL, Appellant
v.
LAMAR COMPANY, LLC and Mae Frances Smith, Appellees.
No. 2004-CA-00870-COA.
Court of Appeals of Mississippi.
September 20, 2005.
Rehearing Denied December 13, 2005.
Certiorari Denied April 6, 2006.
*872 A.R. Wright, Carthage, attorney for appellant.
Mark D. Herbert, Lisa Anderson Reppeto, Jackson, attorneys for appellees.
Before BRIDGES, P.J., CHANDLER and ISHEE, JJ.
ISHEE, J., for the Court.
¶ 1. Wendall Harrell appeals the decision of the Leake County Chancery Court holding him liable for $6,645 in damages for the intentional destruction of an outdoor advertising sign. Finding no error on appeal, we affirm.

FACTS
¶ 2. On May 1, 1965, Roger Smith, Jr. ("Mr.Smith") entered into a lease agreement with Lamar Advertising Company of Mississippi, Inc. ("Lamar"), in which Mr. Smith agreed to erect and maintain an outdoor advertising structure on his property along Highway 35 in Carthage, Mississippi. The lease was never recorded. On December 24, 1966, Mr. Smith married Mae Frances Smith ("Mrs. Smith") and shortly thereafter informed her of the lease agreement. Mrs. Smith knew of the lease agreement and did not object to Mr. Smith's leasing the property, which lease continued uninterrupted for nearly forty years.
¶ 3. The 1965 lease provided for a three-year term from May 1, 1965 to May 1, 1968, with a right to renew for one three-year term. On April 2, 1982, Mr. Smith entered into a three-year lease agreement with Lamar, the term to run from May 1, 1981 to April 30, 1984. Mrs. Smith did not sign the lease and the agreement was never recorded. In 1991, the Smiths sold the 2.6 acres of land upon which the Lamar sign had been erected to Mr. and Mrs. Burgess ("Burgess") and Mr. and Mrs. Thomas ("Thomas"). The warranty deed conveying the property stated that "[t]here is reserved from this conveyance the advertising `sign' which is leased to Lamar and that Smith retains all rentals and shall continue to receive rentals from Lamar as long as the sign shall continue to be rented." Both Mr. And Mrs. Smith signed the warranty deed, which was recorded with the Leake County Chancery Clerk.
¶ 4. Burgess and Thomas borrowed the money to purchase the property from the Carthage Bank, using the purchase property as security. The deed of trust to the Carthage Bank made no exception or reservation for an easement on land leased to *873 Lamar. However, it did reserve the sign and rent therefrom. On May 1, 1993, Mr. Smith executed another lease to Lamar, in this instance for a term of ten years. Due to Mr. Smith's blindness at that time, Mrs. Smith signed the May 1993 lease on Mr. Smith's behalf, in his presence and with his permission. The lease was never recorded. Subsequently, Burgess and Thomas defaulted on their loan from the Bank of Carthage. On December 13, 1996, the 2.6 acres previously conveyed to Burgess and Thomas was sold in a foreclosure sale to Wendell Harrell ("Harrell"). The property was conveyed by a substitute trustee's quitclaim deed. Harrell had viewed the property and had seen the sign prior to purchasing the property. Neither the trustee's deed nor the certificate of title obtained by Harrell pursuant to the sale made special mention of any exception or reservation regarding the sign. While affirming that there were no taxes, enrolled judgments or liens against the property, the certificate of title did except any "reservations and/or conveyances, if any."
¶ 5. In June of 2001, some five years after he purchased the property, Harrell contacted Lamar seeking to obtain rent for the sign structure. Lamar officials scheduled a meeting with Harrell on June 19, 2001, to discuss the matter. Harold Smith and David Johnson, the Lamar representatives, obtained a copy of the warranty deed from the Chancery Clerk of Leake County. When Harold Smith attempted to show the deed to Harrell, Harrell slapped the deed out of his hand and told the men that if they did not get off his property he would "whip their a* *." Immediately after his encounter with the men from Lamar, Harrell bulldozed the Lamar sign to the ground. Mrs. Smith was at home working in her yard and heard the noises caused by the destruction of the sign. Shortly thereafter, Harrell knocked at her door and offered her $2,000 for her interest in the property, which she refused.
¶ 6. After learning of the destruction of the sign, Lamar filed suit against Harrell in Leake County Chancery Court for damages to the sign. An injunction was issued against Harrell on July 5, 2001, in order to prevent him from impairing Lamar in its attempts to restore the sign. Harrell filed an answer and counterclaim asserting that Smith and Lamar had violated his property rights and encroached upon his land, and additionally asking the court to adjudicate the lease contracts as void and dissolve the injunction.
¶ 7. After an evidentiary hearing on March 3, 2004, the chancery court entered its final judgment finding that Harrell had committed tortious acts by destroying the sign and that Lamar had a valid right to the property. The court ordered Harrell to pay Lamar $6,645 for replacement of the sign and $20,392.86 in attorney's fees. Harrell was also permanently enjoined from taking any action to interfere with Lamar or the sign. Aggrieved by the decision, Harrell asserts the following errors on appeal: (1) whether the chancery court erred in failing to find the various leases and deeds defective; (2) whether Harrell is a subsequent innocent purchaser without notice; (3) whether Smith and Lamar committed acts of conspiracy, collusion and fraud; (4) whether the chancery court erred by failing to sustain Harrell's motion to strike Mrs. Smith's affidavit; (5) whether the sign is a trade fixture or real property; and (6) whether the chancery court's validation of the leases and reservation of land gives liberal interpretation to favor Lamar and creates uncertainty.

ISSUES AND ANALYSIS

I. Whether the chancery court erred in failing to find the various leases and deeds defective.
¶ 8. Harrell first asserts that the chancery court erred for multiple reasons in *874 failing to find the various deeds and leases to be defective. Among Harrell's arguments to void the 1965, 1982, and 1993 leases are the following: the leases were printed on forms prepared by Lamar and filled in by Lamar; the leases are unacknowledged; the leases are unrecorded; Lamar prevented public notice of the leases; Lamar and Smith did not survey the proposed location of the sign to be erected; the leases do not contain adequate legal descriptions of the leaseholds or easements; Harrell did not have notice of the lease contracts; the sign erected in 1965 was on land in which Smith did not have a vested interest; the 1965 lease fails to provide Lamar with an easement for access to Smith's property; the 1965 lease expired on April 30, 1971; Mrs. Smith did not sign the lease of homestead property; Mr. Smith did not sign the 1993 lease; the 1993 lease attempted to renew a void lease; the 1965 and 1982 leases are not signed by an officer of Lamar; and the leases are vague and ambiguous.
¶ 9. Before examining Harrell's assignments of error, we first note our guiding standard of review. This Court employs a limited standard of review in reviewing the decisions of a chancellor. Reddell v. Reddell, 696 So.2d 287, 288 (Miss.1997). The findings of a chancellor will not be disturbed unless this Court finds the chancellor abused his discretion, was manifestly wrong or applied an erroneous legal standard. Bank of Miss. v. Hollingsworth, 609 So.2d 422, 424 (Miss. 1992). As for questions of law, the standard of review is de novo. Zeman v. Stanford, 789 So.2d 798, 802 (¶ 12) (Miss. 2001).
¶ 10. In determining whether a lease is void for vagueness or ambiguity, this Court will look to the intent of the parties to determine the meaning of any disputed provision and the validity of the contract. See Stampley v. Gilbert, 332 So.2d 61, 63-4 (Miss.1976). Furthermore, "[t]here is also the universal rule of construction that when the terms of a contract are vague and ambiguous, they are always construed more strongly against the party preparing it." Id. at 63. The intent of the parties to the lease in the case sub judice is readily apparent. Lamar was to lease a site for a sign from the Smiths, an understanding that lasted for thirty-nine years. There is no need to construe the leases against Lamar as the drafter.
¶ 11. Harrell also argues that the description of the land upon which the sign was placed was inadequate, thereby voiding the leases. Harrell cites Overby v. Cavanaugh, 434 So.2d 1365, 1366 (Miss.1983), for the proposition that the description sub judice is void for vagueness as "[t]here are several different configurations or shapes that may be drawn from the subject description, and thus, the description is not valid and reversal is required. . . ." Harrell's reliance on Overby is misplaced, as the Mississippi Supreme Court has unequivocally recognized that there is a material difference between the construction to be given a tax deed as opposed to a voluntary conveyance. Neil v. Jones, 497 So.2d 797, 799 (Miss.1986). Specifically, the Mississippi Supreme Court has recognized that the intent of the parties is controlling when construing the description in a voluntary conveyance, but may be irrelevant in a tax deed, since the owner conveys nothing and intends to convey nothings. Id. at 799-800. According to the leases before this Court, the property to be leased is easy to ascertain, and no confusion is caused by the description as to what property is described. Furthermore, no doubt exists as to the intent of the parties to the leases.
¶ 12. Harrell next challenges the acknowledgment and recording of the leases. *875 Harrell argues that the signatures of the individuals representing Lamar are insufficient as it is unclear whether they signed the documents on their on behalf or on the behalf of Lamar. An examination of the leases as a whole reveals that the individuals signing the leases did so on behalf of Lamar. See White v. Delta Foundation, Inc., 481 So.2d 329, 333-34 (Miss.1985) ("interpretation of acknowledgments encompasses examination of the body of the instrument itself, and an acknowledgment will not necessarily be deemed fatal for an omission which can be supplied from the body of the instrument itself"). Failure to acknowledge the deed or leases, while imprudent, does not affect the validity of a deed, but only its admittance to record. Crum v. Butler, 601 So.2d 834, 837 (Miss.1992) (citing Miss.Code Ann. § 89-3-1 (1972)). The effect of the lack of acknowledgment is that any such instrument which is filed of record without an acknowledgment or proof shall not be notice to creditors or subsequent purchasers for valuable consideration. Id. at 837 (citing Miss.Code Ann § 89-3-1 (1972)). However, in Crum, the court went on to hold that, under the facts of the case, the unrecorded deed was effective against the subsequent purchaser due to the actual knowledge imparted by the presence of the railroad tracks on the property prior to the conveyance. Id. Here, as in Crum, while the leases themselves were not recorded, the 1991 warranty deed, which was duly recorded, clearly referenced the leases. The sign, which Harrell admitted he had seen, had been standing on the property since 1965. As such, the leases gave Harrell notice of the interests of Lamar and the Smiths in the property.
¶ 13. Harrell next argues that the 1982 renewal lease is void under the homestead statute because Mrs. Smith did not sign it. Mississippi Code Annotated § 89-1-29 (1972) provides that a conveyance of a homestead by an owner without the signature of a spouse is void. Harrell's argument fails as a matter of course. Mr. and Mrs. Smith married in 1966, one year after Mr. Smith first leased his property to Lamar for the billboard sign. Consequently, the homestead rights acquired by Mrs. Smith were subject to the pre-existing 1965 agreement. See Hughes v. Hahn, 209 Miss. 293, 298, 46 So.2d 587, 589 (1950) ("[t]he statute controls except as to an encumbrance to secure the payment of the purchase price of the homestead, and except as to a prior covenant or encumbrance executed by the husband while single, or a deed given in pursuance of the prior covenant after marriage and occupancy as a homestead"). Furthermore, Mrs. Smith's uncontested testimony was that she knew of the lease and agreed to the 1982 renewal at the time Mr. Smith signed it. She later affirmed this agreement by executing the 1991 warranty deed that specifically incorporated by reference the 1982 lease renewal. She affirmed the agreement again by the 1993 lease renewal. Under Mississippi law, it is not necessary that Mr. and Mrs. Smith sign the lease at the same time. It is only necessary that each party presently consent at the time the other signed. Id. at 299, 46 So.2d at 589. Therefore, we find that the chancellor committed no error of law in concluding that the homestead statute was inapplicable for the purpose of voiding the leases.
¶ 14. Harrell also argues that upon expiration of the 1965 lease after May 1, 1971, Lamar became a tenant at sufferance. He further alleges that, since the 1982 lease is void, Lamar was a holdover tenant until July 12, 1991 when the Smiths conveyed the 2.6 acres to Burgess and Thomas. This argument relies wholly upon the assumption that the 1982 lease *876 renewal was void, which it was not. This argument is therefore without merit.
¶ 15. Harrell further argues that the 1993 lease renewal is void, as it is a renewal of a "void" lease. This argument again relies on the faulty assumption that the 1965 or 1982 leases were void. For the aforementioned reasons, Harrell's first assignment of error is without merit.

II. Whether Harrell is a subsequent innocent purchaser without notice.
¶ 16. Harrell argues that he is a bona fide purchaser for value without notice of the lease. Harrell acquired the 2.6 acres in question by a substitute trustee's deed of J.E. Smith, Jr., for Carthage Bank, dated December 13, 1996, and recorded on December 17, 1996. A good faith purchaser is "one who has in good faith paid a valuable consideration without notice of the adverse rights in another." Giesbrecht v. Smith, 397 So.2d 73, 77 (Miss.1981). Harrell argues that the lease contracts to Lamar were unrecorded, and that the deed to Harrell made no reservation or exception for the leases or for the land where Lamar had erected the billboard sign. Harrell further argues that he had no constructive or inquiry notice of the leases. "Constructive notice arising from the record . . . imputes only such knowledge as the instrument there recorded discloses, and not what a diligent inquiry into its meaning might disclose." Simmons v. Hutchinson, 81 Miss. 351, 356, 33 So. 21, 22 (1902). Harrell relies on Robertson v. Domroski, a case in which a chancellor's order to partition a tract of land was reversed, for the following proposition: "Where a subsequent purchaser for value takes title from a prior bona fide purchaser for value without notice, then the subsequent purchaser is entitled to all the protection the recording system offered his grantor . . ." Robertson v. Dombroski, 678 So.2d 637, 640 (Miss.1996). Harrell asserts that he did not know the sign was on the property when he purchased the land at public auction, and thus takes the property free and clear of any leasehold.
¶ 17. When one seeks to acquire property the law in Mississippi is that:
A purchaser of land is charged with notice not only of every statement of fact made in the various conveyances constituting his chain of title, but he is also bound to take notice of and to fully explore and investigate all facts to which his attention may be directed by recitals in said conveyance contained. The duty is also imposed on him to examine all deeds and conveyances previously executed and placed of record by his grantor-either immediate or remote-if such deeds or conveyances in any way affect his title. And if any such deed or conveyance there is contained any recital sufficient to put a reasonably prudent man on inquiry as to the sufficiency of the title, then he is charged with notice of all facts which could and would be disclosed by a diligent and careful investigation.
Bedford v. Kravis, 622 So.2d 291, 295 (Miss.1993) (citing Dead River Fishing & Hunting Club v. Stovall, 147 Miss. 385, 395-96, 113 So. 336, 337-38 (1927)). At trial the chancellor held that Harrell was not a bona fide purchaser based upon the following facts: first, both the sign structure and the Lamar lease with the Smiths were clearly noted in the 1991 warranty deed from the Smiths to Burgess and Thomas; second, Harrell admitted that he had never bothered to look at the 1991 warranty deed prior to purchasing the property; and third, the conspicuous nature of the sign itself was more than sufficient to put Harrell on notice of Lamar *877 and the Smiths' continued interests in the property.
¶ 18. Lamar argues on appeal that its possession of the property as tenant imports knowledge of its rights in the property to Harrell. Stevens v. Hill, 236 So.2d 430, 434 (Miss.1970) ("[p]ossession of real estate is constructive notice of the title in the occupant to the same extent as that imputed by the record of a deed to him thereto."). Similarly, the Mississippi Supreme Court has held that "[o]pen and notorious possession of land under claim of title is sufficient to put subsequent purchasers on inquiry [notice] as to the possessor's rights therein." Beauchamp v. McLauchlin, 200 Miss. 83, 94, 25 So.2d 771, 775 (1946) (citing Bolton v. Roebuck, 77 Miss. 710, 27 So. 630 (1900)). Lamar argues that it was undisputed that the sign and lease were referenced in the 1991 warranty deed conveying the 2.6 acres to Burgess and Thomas. It is undisputed that Lamar was occupying the property prior to Harrell's purchase at the foreclosure sale. Likewise, Lamar argues that Harrell did not dispute that he had seen the sign prior to his purchase.
¶ 19. The chancellor found that Harrell had seen the sign on the 2.6 acres prior to purchasing the property, and that Harrell took through the trustee deed only such interest as was conveyable, namely the interest subject to the reservation of the 1991 deed to Burgess and Thomas. We find no error in the chancellor's findings that Harrell had actual and constructive notice of the lease and that Harrell was not a bona fide purchaser for value without notice. Thus this assignment of error is without merit.

III. Whether Smith and Lamar committed acts of collusion, conspiracy, and fraud.
¶ 20. Harrell alleges that Lamar and Mrs. Smith conspired to defraud him as the future owner of the 2.6 acres in question. Harrell asserts that Mr. Smith's lease of a second sign site to Headrick Outdoor Signs in 1994 and the erection of a sign on an adjacent piece of property are evidence of a conspiracy between Lamar and Mr. Smith, and that the sign is a nuisance to Harrell that seriously affects the present and future value of Harrell's property. This assertion was dismissed by the chancellor at trial as it was unsupported by any evidence or authority. Harrell has cited no authority on appeal. "It is the appellant's duty to provide authority and support for its issue." Rigby v. State, 826 So.2d 694, 707(¶ 44) (Miss.2002). We therefore find this issue to be without merit.

IV. Whether the trial court erred by failing to sustain Harrell's motion to strike Mrs. Smith's affidavit.
¶ 21. Harrell next asserts that Mrs. Smith filed a false affidavit in support of her motion for summary judgment. According to Harrell, the affidavit stated false matters and that when Mrs. Smith quoted from the 1991 deed reservation clause, she added the words "right," "site," "renew," and "pursuant" in order to bolster her interpretation of the clause. The chancellor's order denying Harrell's motion to strike explicitly stated that the chancellor would not use the assertions of any affiant to construe the meaning of the reservation clause of the 1991 deed. There is no evidence that the chancellor acted in a manner contrary to his own order, thus this issue is without merit.

V. Whether the billboard sign is a trade fixture or real property.
¶ 22. Harrell asserts that the billboard is a trade fixture and that if the leases are void, the trade fixtures can be removed *878 from Harrell's property. The leases are not void. This issue is moot.

VI. Whether the chancery court's validation of the leases and reservation of land gives liberal interpretation to favor Lamar and creates uncertainty.
¶ 23. For his last assignment of error Harrell argues that the chancery court's interpretations of the leases were liberally construed in favor of Lamar. Harrell also argues and that the leases themselves were ambiguous. The chancellor, in examining the intent of the parties to the leases, found no such ambiguities. Due to this fact, there was no need to construe the leases against the drafter Lamar, nor is there any evidence that the chancellor did so. This assignment of error is without merit.
¶ 24. THE JUDGMENT OF THE LEAKE COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., BRIDGES AND LEE, P.JJ., IRVING, MYERS, CHANDLER, GRIFFIS AND BARNES, JJ., CONCUR.